443
10....48
49....691

## WILLIAM M. TALLMAN, Appellee,

*vs.*

## WILLIAM TRUESDELL et al., Appellants.

### APPEAL IN EQUITY FROM THE ROCK CIRCUIT COURT.

The Circuit Court have power to render a final decree at a special term.

An agreement to pay interest semi-annually at the rate of 12 per cent. per annum, is not usurious.

An agreement to pay interest semi-annually, at the rate of 12 per cent. per annum, and if not paid when due, such interest remaining unpaid to draw interest after the same rate, is not upon its face usurious.

A stipulation to pay $40 solicitor's fees, in case the mortgage is foreclosed, is not illegal.

A reference to a commissioner to ascertain the situation of the mortgaged premises, is not necessary. Proof for that purpose may be taken in open court.

The appellee filed his bill in the Racine Circuit Court for the foreclosure of a mortgage executed by the appellant Truesdell, to A. Hyatt Smith, and assigned by said Smith to the appellee Tallman.

The bill charges that the mortgage was given upon certain lands in Rock county, being lots eight and nine in the Janesville water power, and the perpetual use of 1000 spuare inches of water, etc., to secure the payment of $9,500 00, in three annual payments, with interest at 12 per cent. per annum, payable semi-annually until paid, according to the condition of three certain promissory notes, bearing even date with said mortgage, &c.

The bill further charges that the said Truesdell covenanted and agreed, in and by the said mortgage, that in default of payment of the said sum &c., at the time &c., then such sum of money as should re-

main unpaid, together with all such sums as might or should be due "for interest, at any time, upon said sum of money or any part thereof, should be upon and draw compound interest from and after the time when the same should become due and unpaid, at the rate of 12 per cent. per annum."

The bill further charges that the said Truesdell in and by the said mortgage, covenanted and agreed, that in default of payment of the sum specified therein, or the interest thereon at the time limited for payment, and the said mortgage should be foreclosed by reason of the non-performance of the conditions thereof, "he would pay to the said A. Hyatt Smith, his heirs or assigns, forty dollars as solicitor's fees for foreclosing said mortgage, in addition to any costs or fees allowed by law."

The bill contained a prayer for the usual decree of sale, and for the "payment of forty dollars solicitor's fees stipulated and agreed to be paid in the said mortgage in addition to any fees or costs allowed by law," and for general relief.

None of the defendants answered the said bill, and the time having gone by, the bill was taken as confessed, and a decree rendered for the sale of the premises, &c., in the usual form, and also as follows:

"And that the said sheriff out of the proceeds of said sale retain his fees and disbursements on said sale and pay the complainant or his solicitor, out of said proceeds, his costs in this suit to be taxed, and forty dollars for solicitor's fees, stipulated in said mortgage, and also the amount so due for principal and interest, as well as the amount to become due for principal and interest as aforesaid, together with legal interest thereon as to the amount now actually due from the date

hereof, or so much thereof as the said mortgaged premises will pay the same."

From which decree an appeal is brought to this court.

*J. A. Sleeper*, for the appellee.

*John R. Bennett*, for the appellants.

*By the Court*, SMITH, J. The bill in this case was filed in the Circuit Court of Rock county the 17th of December, 1853, for the foreclosure of a mortgage, executed by the defendant Truesdell and wife to A. Hyatt Smith, and assigned by the latter to the complainant. The defendant interposed no defence in the court below, and the bill was taken as confessed, and on the 8th day of February, 1854, at a special term of the Rock Circuit Court, a final decree was made by the court. The defendant Truesdell appealled from the decree and the cause is now before this court for determination.

Several questions are raised by the counsel for the appellant of interest and importance, and it is insisted that the decree ought to be reversed, for errors which are apparent upon the face of the record. These questions we shall endeavor to dispose of in their order.

It is contended that the Circuit Court had no power to make a final decree at a special term.

This is a question of great importance, and upon its determination may depend interests to a very large amount. It has been the practice in several, if not in all the circuits to hold special terms for the disposition of chancery business, the judges not being able to dispose of the causes at the regular or stated terms.

June Term
1854.

Tallman
vs.
Truesdell
et al.

Final decrees have been pronounced, at the special terms, sales made and titles acquired under them, throughout the State, in a vast number and variety of cases during the last six years, and if all this has been done without authority, it is quite time that the fact should be known, that the mischief may not be increased. However, it by no means follows, that because such has been the practice, it is therefore legal. Whatever amount of property may be involved in the question, or however disastrous the consequences might be, it is the duty of this court to decide as the law shall require.

The validity of this objection depends upon the construction to be given to the statute. Section 5 of chapter 83 of the Revised Statutes provides as follows :

"It shall and may be lawful for the judges of the Circuit Courts of this State, to hold special or adjourned terms at any time they shall deem it necessary, for the purpose of hearing and disposing of all matters or questions of law, *and all judgments, orders or decrees, that may be made or entered at special terms, shall be as valid and effectual to all intents and purposes, as any judgments, orders or decrees, made or entered in term time.*"

It is obvious that the power given by this section, to the Circuit Courts, extends to chancery cases, as well as to cases at law. Motions are as applicable to chancery as to law practice, and questions of law arise in the one as well as in the other. If the grant of power is to be limited to the first clause of the section, we think it comprehends cases on the equity side of the court. But the language of the last clause seems to remove any doubt which there might other-

June Term
1854.

Tallman
vs.
Truesdell
et al.

wise arise. The terms "orders" and "decrees" are peculiarly, if not exclusively, applicable to chancery practice. Taking the whole section together, we think this construction is not only warranted, but that it precludes every other construction.

The same force and effect is given to orders and decrees made at such special term as to judgments at law, and judgments, orders and decrees made at such special terms, are declared to be as valid as though made at a regular or stated term. Of course this validity is limited to such judgments, orders and decrees as the court has authority to make or render. The question then arises, what are the judgments, &c., which the Circuit Court can render at a special term? Undoubtedly this section authorizes these courts to pass judgment upon any question of law that may arise in a case. It is every day's practice, to postpone the hearing and determination of demurrers, motions in arrest of judgment, for a new trial, and the like, from the stated to a special term, and there is no doubt that such practice is in conformity with the section of the statute above quoted. These are purely questions of law. If the court may hear and determine a question of law raised by a demurrer, it would seem to follow that it may render final judgment, for the judgment upon demurrer is frequently final. The decision of a motion in arrest of judgment necessarily implies the power to render final judgment, for if the motion prevails, it is the end of the case, if overruled, judgment follows as a matter of course. So of a motion for a new trial, to stay proceedings after verdict, and many others that may be interposed. The conclusion seems to be inevitable, that the court has the power to render a final judg-

JUNE TERM
1854.

Tallman
vs.
Truesdell
et al.

ment in a case at law   And this probably extends to all cases where the intervention of a jury is not required, or when only questions of law are in the way of final judgments.   If, therefore, the power conferred by this statute extends to cases in chancery, and the court has power to render a final judgment in cases at law, why has it not the power to render a final decree when the question to be determined is one of law merely?   The bill in this case had been taken as confessed, the facts all admitted, and the simple question was, whether upon the case made by the complainant in his bill, he was entitled by law to relief.   Suppose, instead of allowing the bill to be taken as confessed, the defendant had demurred. This would have presented a mere question of law, and the court could as well hear and determine it, as a demurrer in a case at law.   If the demurrer prevailed, the bill would have been dismissed, and this would be a final decree in favor of the defendant. The bill being taken as confessed, nothing remained but the simple question of the legal right of the parties as presented by the bill.   The rest was matter of mere computation.

There is another provision of the statute, a part of section 17, of chapter 34 of the Revised Statutes.   It is as follows : " If the defendant shall not file his plea, answer or demurrer within the time limited by the court or judge at his chambers, then said court or judge may, at their discretion, render or decree thereon, or order the complainant to prove the allegations of his bill, or examine the complainant on oath, touching the allegations of such bill, and such decree shall then be made as the court or judge shall think fit."

We are not aware that any authoritative construction has been given to this provision, but taken literally it would seem to authorize the court or judge, at any time, whether in term or out, in case of default, to proceed to a final disposition of the case. The defendant having been regularly served with process, and time given him to plead, answer or demur, failing to do either, or interpose any objection to the plaintiff's claim, is deemed to have admitted its correctness. The court or judge is then authorized to dispose of the case, either upon bill, or to require proof, or to put the complainant upon an examination. This provision, however, only applies to cases of default. It authorizes the taking of proofs by the judge or court in term or out of term, and a decision upon questions of fact as well as of law.

But whether or not this provision may aid in the construction to be given to section 5, of chapter 53, we are of the opinion that the Circuit Court had power to render the decree in this case at the special term in February, by virtue of that section alone, and that a proper construction thereof authorizes the court to render a final decree in all cases prepared for a final hearing. The 15th Rule in Equity, cited by the counsel for the appellant, may apply as well to a special as to a regular term. By the provisions of chapter 45 of the session laws of 1853, notice of such special term is required to be given, and the case may be brought to a hearing as at a stated term.

It is further objected to the decree, that the covenant in the mortgage, in case of default in the payment of principal and interest, to pay compound interest on the amount so remaining due and unpaid, is usurious, and therefore the mortgage is void.

30

JUNE TERM
1854.

Tallman
vs.
Truesdell
et al.

The mortgage contains the following covenant: "That in case default shall be made in the payment of the said sum of money above specified, or any part thereof, or the interest thereon, or any part thereof, at the time or times above limited for the payment thereof, then such sum of money, or such part thereof as shall remain unpaid, together with all such sums of money as shall or may be due for interest at any time, upon said sum of money or any part thereof, shall be upon and draw compound interest, from and after the time when the same shall become due and payable, and after the rate of twelve per centum per annum, any thing herein to the contrary notwithstanding." ·

We do not think the agreement to pay compound interest in case of default in paying the interest stipulated is necessarily usurious. It is not a positive undertaking to pay compound interest at all events, but only in case of default in complying with the other covenants of the mortgage, and may be regarded in the light of a penalty or forfeiture. This question is not whether the court will enforce the penalty, or whether it is compatible with good conscience, but whether its incorporation in the instrument renders the whole contract corrupt and usurious. We think not. The defendant could readily relieve himself from all liability thereto, by performance of the covenants stipulated; and if its terms be hard, inequitable or unconscionable, a court of equity would refuse its aid in enforcing them, but they do not vitiate the whole contract. It is understood to be conceded, that compound interest was not allowed in the court below. The cases referred to (1 *John. Ch. R.* 13, and *John. Ch.* 313) do not allow compound interest, and espe-

cially on an agreement to pay it after interest had become due, but they do not hold the agreement to be usurious, and the contract void for such cause.

June Term
1854.

Tallman
vs.
Truesdell
et al.

The next question is, whether an agreement to pay interest at the rate of twelve per centum per annum, semi-annually, is usurious, according to the provisions of the act of the legislature of 1851, that is to say, is such a contract to pay or receive a greater sum, for the loan or forbearance of the principal, than after the rate of twelve dollars upon one hundred dollars for one year?

The statute aforesaid allows the parties to contract at the rate of twelve per cent. per annum, and the 4th section of the act, (*Ch*, 172 *Sess. L.* 1851,) provides as follows:

"All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatever, (except bottomry and respondentia bonds and contracts,) and all deposites of goods, or other things whatsoever, where upon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum or value, for the loan or forbearacce of any money, goods or other things in action, than is above prescribed, shall be void," &c.

It is contended that the payment of interest semi-annually at the rate of twelve dollars for the loan or use of one hundred dollars for one year; or in other words, six dollars, at the end of six months, virtually gets interest on the six dollars so received during the remaining six months of the year.

The statute is silent as to the time when the interest may be paid, and only prescribes the rate for a specified term. It is difficult to distinguish clearly between the case when a loan of one hundred dollars is made

JUNE TERM
1854.

Tallman
vs.
Truesdell
et al.
for six months at the rate of twelve per cent. per annum, and at the expiration of the time the lender receives his money back with six dollars interest, and the case where a loan of one hundred dollars is made for one year at the rate of twelve per cent. per annum, and at the end of six months six dollars should be paid as interest, and at the expiration of the year, one hundred and six dollars are paid. It is true that the borrower loses the interest on the six dollars which he paid at the end of six months, for and during the remaining six months of the year, but it is not true that he pays interest on that six dollars to the lender. The lender may, or may not get interest on this sum, but if he does so, he does not get it from the borrower, since it is not a contract with him for a greater rate than twelve per cent.

That a distinction between the cases like the foregoing has been attempted is certainly true, but it has never been rendered sufficiently clear for practical purposes. Where interest is taken in advance, the case is different. If the lender reserves his twelve per cent at the time of the loan, the borrower gets eighty-eight dollars, for which he promises to pay one hundred dollars at the end of the year. In this case he actually pays to the lender, interest on the twelve dollars reserved: that is, the twelve dollars which he pays at the time of the loan, is equal to $10.56 interest on the eighty-eight dollars actually received, and $1.44 at the rate of twelve per cent on the twelve dollars reserved. This would clearly exceed the rate prescribed by the statute. But we do not think it was the design of the statute to make any deduction from the rate of twelve per cent agreed upon, in cases where the term for the loan is

June Term
1854.

Tallman
vs.
Truesdell
et al.

less than one year, or where the interest is agreed to be paid oftener than once a year.

In the case of a bank, or other corporation for the loaning of money, when the rate of interest which it is allowed to receive or contract for is prescribed by its charter, contracts for a greater rate of interest, have been held to be void; not so much for the violation of the general usury laws, but because such a contract was unauthorized by its act of incorporation.

A bank whose charter authorizes it to contract for the loan of money at the rate of six per cent. per annum, cannot make a valid contract for seven per cent.; not because such a contract is corrupt and usurious, but because the bank had no power to make such a contract. Of this nature are most of the cases cited by the appellant in this cause. The case of *Barnes vs. Worlich, Yelverton's Reports*, 31, has been examined, but its authority is very much shaken by other reports of the same case in—

Indeed were it otherwise, it is at variance with the whole tenor of American authority upon statutes essentially like our own. Substantially and practically the same objection applies to the taking six dollars interest for the loan of one hundred dollars for six months, as for the taking twelve dollars for the loan of one hundred dollars semi-annually, and we do not think a fair construction of the statute will prohibit such contracts fairly and honestly made.

All that has been here said of course applies to contracts made in good faith, and without any design to violate or evade the law. If the payment of interest be so arranged at short periods, or soon after the date of the loan, as a mere device to elude the penalty of the statute, or as a cover for usury, and

JUNE TERM
1854.

Tallman
vs.
Truesdell
et al.

this is averred and proved, as a matter of course it will take its place among other tricks and devices for a like purpose, and must meet a like fate.

So, in regard to the stipulation for the payment of counsel or solicitors' fees in case of foreclosure. Whenever this is resorted to as a cover for a greater rate of interest than is allowed by law, it then vitiates the contract, but when it is stipulated in good faith, as an indemnity for the necessary expenses of foreclosure, and is reasonable in amount, we see no objection to its incorporation in the contract, or its enforcement. The same remarks made in reference to the agreement to pay compound interest in case of default in paying the interest as it became due, will apply to this provision. Upon all these questions, the authorities cited by counsel appear to be conclusive, and would preclude us from subjecting the statute to the close arithmetical construction suggested by the counsel for the appellant, even if we were disposed to do so. But we are satisfied that we have given to it the construction which the legislature intended, one which its language requires, one which will render it intelligible to all, and one which will render its operation as it was designed to be, a protection to the weak and not a trap for the unwary. *Daw vs. Drew*, 3 *N. H. R.* 40. *Pierce vs. Row*, 1 *id.* 179. *Lagrange vs. Hamilton*, 2 *H. B.* 144. *Greenleaf vs. Kellogg*, 2 *Mass.* 568. *Morgan vs. Matthew*, 2 *Vesey Jr.* 15. *Mowry vs. Bishop*, 5 *Paige*, 98. *Moore vs. Eylton*, 1 *Dev. Eq. N C. R.* 433. *Campbell vs. Shields*, 6 *Leigh Va.* 517. *Kennow vs. Dickens*, *Taylor's Conference Law & Eq. by Batt. N. C.* 435. *Cameron vs. Howard*, 357 *S. C. Spurrier vs. Mayoss*, 1 *Vesey Jr.* 527.

It is to be borne in mind, that there is no answer or plea in this case setting up usury; no allegation, that any of the stipulations in the mortgage, to which exceptions are now taken, were resorted to for the purpose of covering up or disguising a usurious trans action; but the bill was taken as confessed, and now it is claimed that the bill shows on its face a usurious transaction, and hence it is void. We think differently.

"It is further contended that the court below erred in decreeing a sale of the whole of the mortgaged premises, without a reference to a proper officer to ascertain their situation, and whether they could be sold in parcels without detriment to the interest of the parties."

It appears from the record that evidence was taken in open court in reference to the situation of the premises. Under the provisions of our Constitution, testimony in chancery may be taken in the same manner as in cases at law. The object of reference to a commissioner is to inform the court as to the best mode of selling the premises. What the court may learn from testimony taken by a commissioner, it may certainly learn from the examination of witnesses in open court, and undoubtedly it was competent to adopt either mode. It is quite apparent from the evidence recited, that the decree in this respect is correct, and that the premises could be sold in no other mode with any degree of propriety.

The decree of the court below is affirmed with costs.