REED vs. CATLIN, imp.

Same vs. Same.

*June 1 — June 23, 1880.*

SUMMONS. (1) *Proof of service: Presumption as to date of service.* (2) *Form of affidavit.*
PROOF OF NO ANSWER, etc. (3) *No affidavit required.* (4) *When proof need not be filed.*
FORECLOSURE OF MORTGAGE. (5) *Allowance of solicitor's fees.*

1. Where the affidavit of personal service of summons by a person other than the sheriff, being otherwise regular, fails to state, in the body thereof, the *date* of such service, the legal presumption is that service was made on the day the *jurat* bears date; and the proof of service is sufficient.

2. An affidavit of service, *annexed* to the summons and not indorsed upon it, is entitled in the action, and states that the affiant "personally served the annexed summons and the complaint in the above entitled action, upon the above named defendant X," etc., and that affiant "knows the person so served to be the above named defendant X." *Held*, that it

Reed vs. Catlin, imp.

sufficiently shows the identity of the person served with the defendant named in the summons.

3. Sec. 2891, R. S., which authorizes the plaintiff, in certain cases, to apply for judgment on proof that no answer or demurrer has been received, does not require such proof to be made by affidavit; and a paper in the form of an affidavit, but with an erroneous venue in the caption, may nevertheless be sufficient proof as an *oath*.

4. Subd. 2 of said sec. 2891 does not require the proof of "no answer," to be filed with the clerk where the application for judgment is made to the court, and not to the clerk; and where the judgment in such a case recites that no answer, demurrer or notice of appearance had been served, the presumption, in the absence of any affidavit in the record, would probably be that the default was found on sufficient proof.

5. It is within the sound discretion of the court in which a mortgage is foreclosed, to determine whether the whole or any part of the sum stipulated in the mortgage for solicitor's fees shall be included in the judgment; and *it seems* that if the mortgagee appears in and conducts the action in his own person, without employing a solicitor, nothing should be allowed him under such a stipulation; but this court refuses to reverse or modify a judgment allowing the full sum so stipulated ($50), although the plaintiff appeared in the suit in his own person and not by solicitor, where the question of such allowance was not in any way *contested in the court below*.

APPEALS from the Circuit Court for *Pierce* County.

The defendant appealed from judgments of foreclosure. The case is stated in the opinion.

*C. L. Catlin,* for the appellant:

1. The affidavit of service is fatally defective in that it fails to show the time of such service. *Pollard v. Wegener,* 13 Wis., 569; *Knox v. Miller,* 18 id., 397; *Sayles v. Davis,* 20 id., 302; *Northrup v. Shephard,* 23 id., 513; *Grantier v. Rosecrance,* 27 id., 488; *Matteson v. Smith,* 37 id., 333. 2. The order of reference was made, and the judgment rendered, without due proof of appellant's default. Sec. 2891, R. S., requires such proof to be made *and filed.* The only proof of such default disclosed in the record consists of the two pretended affidavits, in each of which the venue is laid in Fond du Lac county, while the *jurat* is signed "J. B. Jensen, Clerk Circuit Court."

Such statement of the venue is *prima facie* evidence of the place where the affidavit was taken. *Cook v. Staats*, 18 Barb., 407; *Lane v. Morse*, 6 How. Pr., 394; *Belden v. Devoe*, 12 Wend., 225, n.; 3 Hill, 461. But this court will take judicial notice that J. B. Jensen is clerk of the circuit court for Pierce county *(Alexander v. Burnham*, 18 Wis., 199); and the record itself discloses the fact, the judgment reciting a reference to "J. B. Jensen, clerk of this court." The clerk of the circuit court is a county officer, and authorized to administer oaths only in his county. Sec. 4080, R. S. The affidavits were therefore nullities. *Davis v. Rich*, 2 How. Pr., 86; *Sandland v. Adams*, id., 127; *Snyder v. Olmsted*, id., 181; *Cook v. Staats*, *supra.* The recitals in the record that due proof of the service and of the default were made and filed, may be impeached by the record itself or by evidence *aliunde.* *Pollard v. Wegener*, *supra*; *Rape v. Heaton*, 9 Wis., 328; *Carr v. Bank*, 16 id., 50. 3. Plaintiff, having prosecuted the suit in person, was not entitled to a solicitor's fee. 2 Jones on Mortg., § 1606; *Patterson v. Donner*, 48 Cal., 369. 4. In one of the cases the affidavit of service is not upon the summons, but upon a separate paper attached thereto. It is entitled, and refers to the person served as *the above named defendant*, but fails to identify him with the defendant *named in the summons*. "The practice of allowing process to be served by persons other than the officer of the law or his deputy, acting under oath, is a relaxation of the common-law rule; and no presumption is to be indulged in such cases upon facts which are not *wholly inconsistent* with any other hypothesis than that the service was legally and properly made." *Sayles v. Davis*, *supra.* See also *Matteson v. Smith, Knox v. Miller* and *Northrup v. Shephard*, *supra.*

For the respondent there was a brief by *Vilas & Bryant*, and oral argument by *Wm. F. Vilas.*

LYON, J. Each of these actions was brought to foreclose a mortgage executed by the defendant *Catlin* to the plaintiff;

and the usual judgment of foreclosure was rendered therein.
*Catlin* made default in both cases, and has appealed from both
judgments. The errors assigned for the reversal of the judg-
ments will be considered in their order.

1. The summons and complaint in each action was person-
ally served on the defendant *Catlin* by a person other than
the sheriff, who made an affidavit of such service in each case.

*First.* In one of the cases the affidavit of service is indorsed
upon the summons, and complies fully with the statute in that
behalf (R. S., sec. 2642), except that the time of service is not
stated in the body of the affidavit. This omission is assigned
as error. The *jurat* shows the date of signing and swearing
to the affidavit, which was several months before the judgment
was rendered. The *jurat* must be read with the body of the
affidavit; indeed, without it the paper signed by the person
who served the summons and complaint is not an affidavit.
We think the legal presumption is, that the service was made
on the day the *jurat* bears date. Certainly it could not have
been made after, although it might have been made before,
that date. Reading the body of the affidavit and the *jurat* to-
gether, it seems to us that the statute has been substantially
complied with. No object sought by the requirement of the
statute in this behalf will fail of accomplishment if this is
held a good affidavit of service. The cases in this court cited
by the learned counsel for the appellant, to show the insuffi-
ciency of the affidavit, all relate to the place or manner of
service, or the existence of facts which would authorize other
than personal service. In none of those cases was there any-
thing on the face of the affidavit itself to supply the omission
held fatal to the service, while in this case the omission in the
body of the affidavit is supplied by the *jurat*. It is believed
that those cases are not in conflict with our ruling on the suffi-
ciency of the proof of service in the case under consideration.

*Second.* In the other case the affidavit of service complies
fully with the statute, but it is annexed to the summons in-

stead of being indorsed upon it, as in the former case, and is entitled in the action. The appellant is referred to therein as "the above-named defendant *Francis P. Catlin.*" It is said that this reference fails to identify the person served with the defendant of the same name against whom the summons was issued. It is sufficient to say that we perceive no force in the point. We think the affidavit shows a valid service upon the appellant.

2. Each record contains an affidavit by the plaintiff of the non-appearance of the appellant and his failure to answer within the time required by law, The venue of these affidavits in the caption is "Fond du Lac County," whereas the affidavits were sworn to before the clerk of the district court of Pierce county on the day the judgments were signed. It is manifest that they were sworn to in the latter county. Error is alleged upon these affidavits because of such mistake in the venue. It is sufficient to say that the statute (R. S.,766, sec. 2891) authorizes the plaintiff to apply to the court for judgment in such cases, on proof (among other things) that no answer or demurrer has been received. The statute does not require an affidavit, and under the decisions of this court the defective affidavits are valid as oaths, and competent proof of the facts stated in them. *Burns v. Doyle,* 28 Wis., 460; *Ball v. Bowe, ante,* p. 495.

Moreover, both judgments recite that no answer, demurrer or notice of appearance had been served by the appellant. In the absence of the affidavits, probably the presumption would be that the court found the fact of such default on other legal and sufficient proof not preserved in the record. The statute last cited (section 2891, subd. 1) requires that such proof be filed with the clerk in cases in which the clerk may enter judgment on default. Such filing is a condition precedent to the authority of the clerk to enter the judgment. The clerk is not a judicial officer, and in the absence of the required proof from the record there is no presumption that it was presented to him.

The validity of such a judgment must therefore be determined by the record alone. Hence the necessity of the requirement that the proof be filed with the clerk. The second subdivision of the section authorizes the plaintiff to apply to the court for judgment in other actions wherein the defendant has made default, "upon the like proof." The application for judgments in these cases was made under that subdivision. The words "upon the like proof," contained therein, evidently mean upon proof of the facts required to be shown in subdivision 1 of the section, which confers authority upon the clerk to enter judgment in certain cases on default. We do not think subdivision 2 requires that such proofs be filed. There is no necessity that they should be filed, because they are made in court, and their sufficiency is determined by the court in the first instance. These observations do not apply to proof of service of process. That must be in writing in all cases, and is of course an essential part of the record. We are speaking of the proof of default alone.

3. Each mortgage contains a covenant that the mortgagor will pay $50 solicitor's fees in case the mortgage is foreclosed, and that sum was included in each judgment. The plaintiff appeared in the action in person, and the records do not show that he employed a solicitor. It is claimed that, under these circumstances, the allowance of the stipulated solicitor's fees is error. The validity of such covenants, if reasonable in amount and made in good faith, has frequently been maintained by this and other courts. *Tallman v. Truesdell*, 3 Wis., 443, and cases cited in Judge Dixon's note. But, because of the unequal terms upon which the parties to a mortgage often meet, covenants for excessive solicitor's fees are sometimes exacted and given; hence, the courts closely scrutinize such covenants, and relieve against them if the stipulated sums are excessive. Presumably, such covenants are made with reference to the costs given by law (*Hitchcock v. Merrick*, 15 Wis., 522); and if the stipulated amount is a

sufficient indemnity for solicitor's services, it seems the court may refuse to allow statutory costs. *Boyd v. Sumner*, 10 Wis., 41.

The cases above cited and others establish the rule that the stipulated sum for solicitor's fees is not to be included in the foreclosure judgment *stricti juris*, but the court, in the exercise of a sound discretion, will consider the stipulation with reference to the taxable costs, and will allow such sum pursuant to the stipulation (giving or refusing costs) as under the circumstances of the case shall be considered equitable. Such a covenant is intended as an indemnity for the expenses which, presumably, the mortgagee must incur for professional services in the action in case the mortgage shall be foreclosed; and we are strongly inclined to the opinion that if the mortgagee appear in the foreclosure action *in propria persona*, and conduct it himself, without employing a solicitor, nothing should be allowed under a covenant to pay a specified sum for solicitor's fees. But it may well be that a mortgagee so appears, and yet employs a solicitor who does not appear of record, whose services are worth the stipulated sum. In such a case we can scarcely say that it is error to enforce the stipulation.

The allowance or disallowance of the stipulated sum as solicitor's fees, being within the discretion of the trial court, to be exercised on equitable principles, it is manifest that such discretion should be invoked before this court can review the judgment in that behalf. The judgments in the present cases went by default. Had the defendant moved the circuit court in due time to deduct from them the sums allowed pursuant to the covenants, the parties could have litigated the question whether the plaintiff is or is not entitled to such allowances. They could then have put the court in possession of all the facts material to a proper determination of the question, and the court would have granted or refused the motions according to the equities of the cases as established by the proofs. Had the question been litigated on the trials or on motions to

Reed vs. Catlin, imp.

modify the judgments, and had the proofs been preserved in the records, we could determine whether the discretion of the court was properly or improperly exercised. But on the records before us we cannot say whether the plaintiff was or was not entitled to the stipulated solicitor's fees. Hence, as the records are made up, we are unable to say that it was error to include the stipulated sums in the judgments.

Moreover, we do not know but that proof was made of facts which clearly entitle the plaintiff to the judgments he obtained. The records disclose nothing to the contrary. The effect of reversing these judgments for the error alleged would be to permit a defendant in a foreclosure judgment to wait until the period of redemption had elapsed, and until the mortgaged premises had been sold and paid for, the sale confirmed, and the purchaser let into possession, and then to appeal and have a reversal of the judgment for some latent error not disclosed in the record, and which, had the trial court been informed of it, would have been corrected at once, thus giving the defendant another year in which to redeem, and on failure to redeem rendering another sale necessary. A practice leading to results so unjust cannot be tolerated. It was suggested in the argument that were the judgments modified instead of being reversed, these results would not follow. We have grave doubts whether the suggestion is correct, but do not determine the point.

We think none of the alleged errors are well assigned, and must therefore affirm both judgments.

*By the Court.*— Judgments affirmed.