Cotzhausen and others vs. Central Trust Co. of New York.

Cotzhausen and others, Appellants, vs. Central Trust Company of New York, Respondent.

*April 13 — May 5, 1891.*

*Attorney's contract for fees.*

1. A letter from the attorneys of a trust company in New York to attorneys in this state, asking the latter to aid them in foreclosing a mortgage, held by the company as trustee, of property here, which states that "the trustee in such cases does not pay counsel fees, but expects that they will be provided for by allowances granted by the court. It is only on this method of compensation that we ask you to co-operate with us in foreclosing the mortgage, such allowance to be apportioned between us to our mutual satisfaction;" and the reply of the latter thereto, "We understand what you say as to liability of the trustee for counsel fees, and concur in your views," *held* to constitute an express contract as to counsel fees.

2. The appellants having acted for the respondent in taking a judgment of foreclosure with an allowance of a certain sum as costs and counsel fees without objection, under a compromise, are not entitled to any greater sum because of their having been superseded by other counsel, on a motion by the respondent to have their fees fixed and their attorney's lien discharged, when the allowance previously made was confirmed.

APPEAL from the Circuit Court for *Walworth* County. The case is stated at length in the opinion.

Cotzhausen and others vs. Central Trust Co. of New York.

For the appellants there was a brief by *Cotzhausen, Sylvester & Scheiber*, and oral argument by *B. W. Jones* and *F. Scheiber*.

*Frank M. Hoyt*, for the respondent.

ORTON, J. The following facts will make the decision of this case intelligible: In November, 1887, one John E. Burton and wife executed a mortgage to the respondent, as trustee, on certain real estate and personal property, to secure the payment of certain notes of the Burton Manufacturing Company, due November 1, 1838, and indorsed by said John E. Burton, amounting in all to the sum of $330,000. The mortgage contains a stipulation that "the costs and expenses of foreclosure and sale, compensating the trustee and its counsel, shall be paid out of the proceeds of the sale."

In October, 1888, it becoming known to the respondent that the mortgage would not be paid at maturity, it placed the same in the hands of Butler, Stillman & Hubbard, its counsel in the city of New York, for foreclosure in this state, where most of the property was situated. This firm of New York lawyers, in the previous twenty years, had done a very large amount of business in connection with the appellants as attorneys at law, and through their aid and assistance, and being well acquainted with their ability, integrity, and diligence, employed them to act as the attorneys or solicitors of the respondent company to foreclose said mortgage in connection with themselves, as counsel, in the circuit court of Walworth county, and sent to them the notes and mortgage and other papers for that purpose, and wrote to them under date of October 26, 1888, as follows: "It is probably unnecessary to state to you, from your long experience in such cases, that the trust company, in matters like the present, does not pay counsel fees, costs, etc., but expects that they (and also a compensation to the trustee

itself) will be provided for by allowances to be granted by the court·to be paid out of the proceeds of the sale. It is only on this method of obtaining compensation that we ask you to co-operate with us in foreclosing this mortgage,— such allowance to be apportioned between us in some manner to be agreed upon to our mutual satisfaction."

On the following 30th day of October the appellants replied as follows: " We understand what you say as to liability of the trustee for costs and counsel fees, and we concur in your views. Unless otherwise directed, we shall pursue, in this instance, what has been our practice in similar cases, viz., we act as attorney of record, add your name as counsel in any suit and proceeding necessary to be instituted, and apportion fees to your entire satisfaction." It is suggested in this 'reply, however, that under Wisconsin laws only nominal fees could be allowed by the court, unless the mortgage contained express authority for that purpose. But this becomes immaterial in view of the fact that the mortgage does contain such express authority.

Under this contract of employment the appellants commenced the action of foreclosure, and performed the necessary legal services in connection with said New York counsel to prepare the case for trial. The defense of usury having been interposed, there was a disagreement between the two firms as to the propriety of demurring thereto, the New York firm insisting that in their opinion the defense was·. well pleaded, and the appellants that it was not. The demurrer having been overruled, there was another disagreement as to whether an appeal should be taken to this court from said order, the New York firm objecting thereto both on account of its uselessness and delay. On the appeal this court affirmed said order. On the 25th day of September, 1889, the appellants wrote to the New York counsel, informing them of the decision of this court on the appeal, and saying that " there is no reason or object of putting off a hear-

ing on the merits any longer," and both firms then proceeded to take certain depositions necessary in the case, and on the ensuing 12th day of October the New York counsel wrote to the appellants that they had agreed with the defendant's counsel to set the case down for trial on the second Tuesday of November following. In the latter part of October *Mr. Cotzhausen*, the senior partner of the appellant firm, left this country for Europe, and on the 2d day of November the appellants wrote to the New York counsel, informing them that *Mr. Cotzhausen* was on his way to Europe, and that they would expect some of them to be present and assist in the trial.

A short time before the time fixed for the trial the defendant submitted to the plaintiff in the action a proposition of compromise or settlement, which was finally accepted, and resulted in the plaintiff taking judgment of foreclosure on certain conditions for the sum of $330,000, and for costs and fees in the sum of $6,500. The appellants made no objection to this disposition of the suit. The judgment was entered to this effect December 19, 1889, and two days before the appellants wrote to the New York counsel that the court had adjudged $6,500 as a reasonable and customary solicitor's fee, inclusive of taxable costs, and that their testimony taken on the reference was all to the effect that $10,000 would be a reasonable fee, exclusive of taxable costs. They stated further in this letter that in the absence of *Mr. Cotzhausen* they were not prepared to say until his return what their course would be in the matter, and that they expected him back the latter part of January.

After *Mr. Cotzhausen's* return from Europe, and on the 6th day of March, 1890, the appellants filed with the clerk of the court a notice of their attorney's lien on the judgment for their fees in the case of $15,000. On the 14th day of May following, the respondent, appearing by Frank M. Hoyt, Esq., as their attorney, moved the court on affi-

davits for an order fixing the amount of the attorney's fees, and asking that upon payment of such amount the appellants' lien be discharged and vacated, and that said Hoyt be substituted in their place as plaintiff's attorney. Thereafter, by consent of parties, the court proceeded, on the testimony adduced, to determine the proper allowance to be made for such attorney and counsel fees in the action. The findings of the court in this matter are in substance as follows:

(1, 2) The above letters between the appellants and the New York counsel, dated the 26th and 30th days of October, 1888, constituted an agreement between the respondent and the appellants that the appellants be retained as attorneys, and Butler, Stillman & Hubbard as counsel, to foreclose said mortgage, and that they should be paid for their services in the action only such an allowance out of the proceeds of the sale of the mortgaged premises as the court should see fit to make, to be apportioned between said firms, to the entire satisfaction of said last-mentioned firm, and that such allowance be the sum of $6,500, as the value of their services to this date.

(3) The respondent company has paid the appellants for all other services rendered by them for said company.

(4) The appellants have received from the company, and collected on its account, the sum of $4,249.68, and after deducting therefrom the disbursements made by them in the action there yet remains in their hands the sum of $1,055.38 to be applied on their services in the case, and deducted from said allowance of $6,500, leaving $5,444.62 to be paid to both said firms.

The said Butler, Stillman & Hubbard having consented in open court that the whole of said allowance be paid to the appellants, the court found as a conclusion of law that upon the payment or tender of said sum of $5,444.62 to the appellants the respondent is entitled to the order of

substitution prayed for. The said allowance having been tendered to the appellants, and they having refused to accept the same, the court made an order that Frank M. Hoyt, Esq., be, and he is hereby, substituted as attorney for the plaintiff in this action in the place and stead of said firm of *Cotzhausen, Sylvester & Scheiber,* and their attorney's lien heretofore filed in the action upon the judgment be, and the same is hereby, wholly discharged and vacated, to take effect sixty days from this date. This appeal is taken from said order.

I have made an unusually full statement of the facts, because the whole of it throws light upon the questions raised, and speaks to the points made by the learned counsel of the appellants.

1. They claim that the court erred in finding that their services were rendered under an express agreement made by the parties in and by the foregoing letter of the New York counsel, dated the 26th day, and the reply thereto by the appellants, dated the 30th day, of October, 1888. The appeal from the order fixing the amount of counsel fees to be paid out of the fund, and the strenuous efforts made by the appellants in this court to have the amount thereof increased, dispose of the question as to whether their fees, whatever the amount, shall be provided for by an allowance of the court out of the fund. They seem to be satisfied with this method of its adjustment and payment. To this extent they seem to be willing to abide by the contract contained in that correspondence, if there was such a contract. The only objection they appear to have to the terms of the contract is that they shall not divide such allowance with the New York counsel; but they deny that said correspondence imports an express contract to such effect, and that any definite agreement was arrived at. The learned counsel of the appellants contends that the letter of the 26th makes a mere *suggestion,* or expresses a mere *expecta-*

*tion*, that their fees should be paid out of the fund and apportioned with the New York counsel. The following language would seem to make their assent to such suggestion or expectation the condition of their employment: "It is only on this method of obtaining compensation that we ask you to co-operate with us in foreclosing this mortgage." The appellants state in reply that their answer by telegraph "means that we are prepared to go ahead on the terms and conditions stated in your favor of October 26th." It is scarcely debatable that this correspondence constitutes an express contract.

It is contended, further, that this pretended agreement was promptly repudiated as early as March, 1889. Under date of March 19, 1889, the New York counsel wrote in reply to appellants' letter of the 14th, inclosing a draft for $2,000 for fees and expenses: "I beg to refer you to our letter of October 26, 1888, and quote therefrom," etc. After quoting said letter, they say: "You have taken charge of the foreclosure with this prearranged mode of receiving compensation for services," etc.,— and they refused to advise the trust company to honor the draft. The appellants, under date of June 4, 1889, wrote as follows: "We are aware that in October last we accepted the suggestion coming from your firm to look for fees and compensation to the funds in the hands of the trustee, and not hold the *Central Trust Company* personally responsible. We do not mean to deviate from this understanding." This is a substantial admission of the contract, although called an "accepted suggestion" and "understanding." If it was obligatory upon the parties as to the fees and compensation being chargeable upon the fund, it was also as to the apportionment thereof between the two firms. I am unable to find any evidence in the correspondence or personal interviews of the parties that the respondent company ever repudiated or consented to the repudiation of that agreement.

I am unable to see the distinction, as it affects this contract, made by the learned counsel of the appellants, between a "solicitor's fee" for the foreclosure of a mortgage, and "the compensation of the plaintiff's counsel," to be allowed by the court out of the proceeds of sale. Call it one or the other, the amount allowed ought and would be the same in this case. It is provided for in the mortgage, and the amount thereof is unlimited, and to be allowed in the discretion of the court. This is to indemnify the mortgagee for all the expenses which presumably he must incur for professional services in the action. *Reed v. Catlin*, 49 Wis. 686–692. The circuit court, in determining the amount to be allowed, unquestionably acted in view of the testimony as to what would be a reasonable allowance for the services rendered. The appellants, under the same rule, would recover no more in a suit against the plaintiff for services in *quantum meruit*. Both the evidence and the findings of the court relate to the value of the services rendered by the appellant, irrespective of the apportionment thereof between the two firms. The apportionment is a subsequent matter. But in this case the whole amount is allowed to the appellants, so that the matter of apportionment mentioned in the agreement becomes in this case immaterial.

2. The learned counsel of the appellants contends that they ought to have a greater allowance, because the suit was settled and compromised without trial, without their knowledge, and that they were superseded as attorneys in the case, to their great injury. The appellants had notice that a proposition of compromise had been made, and that the New York counsel, by stipulation with the defendant's counsel, had set the case down for a trial on a certain day. Before the case was settled, and after it was set down for trial, *Mr. Cotzhausen*, the senior counsel of the appellant firm, went to Europe, and left the case upon the hands of the New York counsel, and his partners requested them to

be present to try the case. On the 6th day of March, 1890, the appellants, after the return of *Mr. Cotzhausen,* filed a lien on the judgment for $15,000 attorney fees. It was long after this, on the 14th day of May, that the motion was made to set aside the lien and to substitute Mr. Hoyt as attorney in the case. The appellants acted for the plaintiff in taking the judgment on the compromise, and were present when the allowance was first made and the costs taxed. Under these circumstances it does not appear that any blame can be attached to the plaintiff, or to its New York counsel, or that the appellants are entitled to any greater allowance on account of the final disposition of the case in the manner complained of. But all of these circumstances are supposed to have been taken into consideration by the witnesses who testified as to the value of the appellants' services, and by the court in making the allowance.

This disposes of all the questions raised by the appellants. There are no questions of law, except the commonest principles, involved in the case. The value of the appellants' services in the case must be governed by the testimony of the able, learned, and respectable attorneys who were sworn as witnesses in the case. The allowance of $6,500 is a fair average of their valuations, and we think the circuit court exercised a sound discretion in fixing it at that sum.

*By the Court.*— The order of the circuit court is affirmed.