THE FIRST NATIONAL BANK OF STILLWATER vs. LARSEN and others.

*February 20 — April 8, 1884.*

*(1) Negotiable instrument: Stipulation for attorney's fee: Uncertainty in amount. (2) Sale of chattels: Warranty: Reasonable diligence in testing: Court and jury.*

1. An instrument, otherwise in the form of a promissory note, contained a stipulation for the payment of ten per cent. attorney's fees for collection in case the principal and interest were not paid at maturity or before suit brought. *Held:*

(1) Such stipulation, though valid, is not conclusive as to the amount to be recovered, but is, in effect, an agreement to pay a reasonable fee not exceeding ten per cent., the amount of which will be determined by the court or jury at the trial.

(2) The amount recoverable on the instrument being, therefore, uncertain, it is not a negotiable note.

2. When a chattel is sold with warranty the vendee must use reasonable diligence in testing the article, and if it proves defective must promptly notify the vendor and offer to return it. What is reasonable diligence is usually a question for the jury.

APPEAL from the Circuit Court for *St. Croix* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought to recover of the defendants the amount of three promissory notes. The action was commenced in September, 1882. One of the notes was for $65, payable on or before June 1, 1882; the others were for $200 each,— the one payable on or before December 1, 1882, and the other on or before December 1, 1883. The notes were all dated at Stillwater, Minnesota, November 11, 1881, and were in the following form, differing only as to amounts and times of payment:

"'$65.00.            STILLWATER, MINN., Nov. 11, 1881.

"'For value received, on or before the first day of June, 1882, I promise to pay to the order of the corporation of Seymour, Sabin & Co., Stillwater, Minn., sixty-five dollars, at the office of American Express Company, in Hammond, Wis., with interest at the rate of ten per cent. per annum from date until maturity, and ten per cent. per annum on the whole amount due upon said note at the maturity thereof, until the same is fully paid. And it is agreed that if this note is paid on or before maturity, then the interest shall be seven per cent. per annum, and if this note is not paid at maturity, I agree to pay ten per cent. attorney's fees thereon, in addition thereto, for the collection thereof: provided, however, if this note is paid before suit is brought thereon, then and in that case the said ten per cent. collection fee shall be entirely remitted, except in case this note is renewed or extended, and new security taken on such renewal or extension, in which case I agree to pay one half of the above attorney's fees of ten per cent., and I consent that the said attorney's fees shall be taxed as costs, and entered up as a part of the judgment, in case a judgment is obtained upon this note. The maker and indorser of this note each hereby waive presentation for payment, protest, and notice of non-payment of this note, and diligence in bringing suit against any party to this note, and sureties agree that time of payment may be extended without notice or other consent.'

"Immediately following this, and before the signatures of the defendants, was a property statement in blank, which does not seem to have been filled up at the time the defendants signed, or at any time thereafter; and we do not copy it, as we think it can have no bearing upon the questions involved in this case.

"It will be seen, by the statement above made, that upon the face of the notes but one of them was due when the action was commenced, viz., the note for $65. For the purpose of showing that they were all in fact due when the action was commenced, although not appearing so upon their face, the plaintiff, in its complaint, alleged the following facts, viz.:   'That at the same time, and as a part of the same transaction, and as collateral security for the payment of the said notes, the said defendants made, executed, and delivered to the said Seymour, Sabin & Co. their (said defendants') certain chattel mortgage, under their hands and seals, bearing date on said 11th day of November, A. D. 1881, whereby said defendants mortgaged to said Seymour, Sabin & Co. one Minnesota Chief 36-inch cylinder separator, No. 5,214, complete, in 40-inch separator frame, with all belts and sieves and attachments complete; that said chattel mortgage was conditioned for the payment of said notes, and contained these further provisions and covenants on the part of said defendants, to wit: That in case of default made in the payment of said notes, or any of them; or in case of any attempt to dispose of or remove from the county of St. Croix, in the state of Wisconsin, the said personal property described in said mortgage; or in case said Seymour, Sabin & Co., or its assigns, should at any time deem themselves unsafe,— then and in that case it should be lawful for said Seymour, Sabin & Co., or its assigns, by themselves or their agents, to take immediate possession of said property,— the possession of said mortgage, or a duly certified copy thereof, being sufficient authority therefor,— and to sell the same at public sale, or as much thereof

as should be sufficient to pay the amount due and to become due upon the said notes, and to apply the proceeds of such sale upon said mortgage debt due and to become due; the sum so realized from said sale, after the payment of the costs and expenses of said sale, and ten per cent. attorney's fees for the foreclosure of said mortgage, to be applied *pro rata* upon each and all of said notes above described, which at the time of such sale should be unpaid, whether the same be then due or to become due, rendering the surplus, if any, to said defendants. And in case of default in the payment of any part of said debt secured by said mortgage, or the interest thereon, the whole of said mortgage debt should thereupon become due and payable, and that suit might be maintained thereon for the whole of said debt secured by said notes and mortgage, with all reasonable costs pertaining to the keeping, advertising, and selling of said property, and the attorney's fees therein stipulated, and that the said Seymour, Sabin & Co., or its assigns, might bring suit for any deficiency that might remain after applying said sums so received from the sale of said mortgaged property, to the payment of said debt as therein provided, and for all expenses incurred in any attempt to take possession of said property.'

" On the trial in the circuit court the three notes were offered in evidence by the plaintiff. The notes were indorsed by the payees and came to the hands of the plaintiff before either of them became due. When the notes were offered in evidence on the trial the defendants objected to their reception on the ground that they were not negotiable, and do not carry with them any presumption of ownership. This objection was sustained by the court and the plaintiff excepted. It was then admitted by the defendants that before the commencement of the action the notes and debt of which they are evidence were transferred to the plaintiff, and that the title to the notes and debt was at the time of

the commencement of the action in the plaintiff. The plaintiff then again offered the notes in evidence, and no objection was made to their reception. The plaintiff then offered in evidence the chattel mortgage set out in the complaint, which was received without objection; and thereupon the plaintiff rested his case.

"The defendants in their answer set out that the notes in question were given for the purchase price of a threshing-machine sold by 'Seymour, Sabin & Co.' to the defendants; that upon such sale Seymour, Sabin & Co. warranted the machine in certain respects. The defendants then allege a breach of the warranty, and that by reason of the breach of said warranty the defendants had sustained damage by loss of time of themselves, their servants, and employees, and expenditures, in trying to make the said machine work, in the sum of $300, and that by reason of the failure of the machine to work they were damaged in their reputation as threshers in the sum of $200. And they further alleged that by reason of the defects in the machine, and its failure to work as warranted, the machine was wholly worthless to the defendants; and they prayed judgment that the action of the plaintiff might be dismissed, with costs. Upon the trial the defendants were permitted to introduce evidence which tended to prove the defense set out in their answer. This evidence was received under the objection and exception of the plaintiff."

There was a verdict for the defendants, and from the judgment entered thereon the plaintiff appealed.

For the appellant there was a brief by *W. H. McDonald* and *Clapp & Macartney*, and oral argument by *Mr. Clapp.* As to the negotiability of the instruments, after referring to the brief of counsel for the appellant in *Morgan v. Edwards,* 53 Wis., 599, they cited in addition to the authorities cited therein: 14 Cent. L. J., 86; 17 id., 282; *Adams v. Addington,* 16 Fed. Rep., 89; *Merchants' Nat. Bank v. Sevier,* 14

The First National Bank of Stillwater vs. Larsen and others.

id., 667, note (evidently written as a note to *Hardin v. Olson*, id., 705); 8 Southern Law Review, 519; 15 Western Jurist, 119; 1 Parsons on Notes and Bills, 38; 29 Am. Rep., 406.[1]

For the respondents there were briefs by *Baker & Smith*, and oral argument by *Mr. Baker*. They argued, *inter alia*, that the instruments are uncertain as to the *amount* to be paid and are therefore not negotiable. *Morgan v. Edwards*, 53 Wis., 599; *Overton v. Tyler*, 3 Pa. St., 346; *Woods v. North*, 84 id., 407; *First Nat. Bank v. Gay*, 63 Mo., 33; *First Nat. Bank v. Bynum*, 84 N. C., 24; *Jones v. Rudatz*, 27 Minn., 240; *Hardin v. Olson*, 14 Fed. Rep., 705; *Lime Rock F. & M. Ins. Co. v. Hewett*, 60 Me., 407; 65 id., 589; *Lamb v. Story*, 45 Mich., 488; *Goodenow v. Curtis*, 33 id., 506; *Garretson v. Purdy*, 14 N. W. Rep. (Dak.), 100. The stipulation in the mortgage that in case of default the whole debt shall become due, renders the *time* of payment uncertain. *First Nat. Bank v. Bynum*, 84 N. C., 24; *Brooks v. Hargreaves*, 21 Mich., 254; *Miller v. Biddle*, 1 Ames Cas. on Bills and Notes, 76; *Smith v. Van Blarcum*, 45 Mich., 371. There is also an uncertainty as to the *fact* of payment of the attorney's fees, which affects the whole instrument. 1 Parsons on Notes and Bills, 42; 1 Daniels on Neg. Inst., 34, 51; *Morgan v. Edwards, supra;* 6 Gray, 340; Byles on Bills, 70; *Cook v. Satterlee*, 6 Cow., 108; Edwards on Bills, 138, 139; *Austin v. Burns*, 16 Barb., 643; *Fralick v. Norton*, 2 Mich., 130, and note; *Killam v. Schoeps*, 26 Kan., 310; *S. C.*, 40 Am. Rep., 313.

TAYLOR, J.  The main question in the case arises upon the objection to the evidence offered by the defendants in support of their answer. Whether the objection should have

---

[1] See, also, 16 Am. Law Rev., 849; 19 id., 102. As to the validity of the stipulation for attorney's fees, see 18 Am. Law Rev., 840, citing *Peyser v. Cole* (Sup. Ct. of Oregon), 4 Pac. Rep., 520, 3 West Coast Rep., 560, and other cases.— REP.

been sustained by the court below, depends upon the question of the negotiability of the notes upon which the action was brought. If these notes were negotiable according to the law merchant, then, as the evidence shows that the plaintiff was a purchaser in good faith and for value before they became due, the proofs offered by the defendants should have been excluded. The question of their negotiability raises two points: (1) Were they negotiable upon their face? and (2) Were they negotiable when considered in connection with the chattel mortgage, which was given at the same time and as a part of the same transaction? As to both questions there is clearly a conflict of authority in other courts, and this court has not passed upon the precise questions raised upon this appeal. Upon the face of the notes they have all the elements of negotiable paper as to time and place of payment, and as to amount to be paid, unless the condition that if not paid when due and before suit brought, ten per centum attorney's fees shall be collectible in addition for collecting the same. Whether this stipulation in the notes takes away their character of negotiability, is a disputed question in the courts. This question was referred to by Justice Lyon in the opinion in the case of *Morgan v. Edwards*, 53 Wis., 599, and the cases sustaining the different views of the courts were cited upon the argument of that case, but the precise point raised in this case was not determined. This court held in that case that where there was a stipulation to pay expenses of collection, which expenses might as well be demanded when the collection was made at the time the note became due, as when collected after due, such stipulation necessarily rendered the amount to be paid on the instrument uncertain, and so rendered the paper non-negotiable.

In the case at bar there is no uncertainty as to the amount which will pay the notes in suit, if payment be made before or at the time the same become due or before suit brought;

and if the stipulation to pay ten per cent. for collection renders the amount uncertain, it only renders it so after the note is past due, and when an action is brought to collect the same. Whether this stipulation renders uncertain the amount recoverable upon the notes in question, depends, *first*, upon the question whether the stipulation is valid for any purpose; and, *second*, whether the amount stipulated to be paid is conclusive upon the parties as to the amount which may be recovered for such costs. This court has repeatedly held that a stipulation in a mortgage to pay attorney's or solicitor's fees, other than the taxable costs, in case it becomes necessary to foreclose the same, is not void and will be enforced when the amount stipulated to be paid is reasonable. See *Boyd v. Sumner*, 10 Wis., 41; *Rice v. Cribb*, 12 Wis., 179; *Hitchcock v. Merrick*, 15 Wis., 522; *Mosher v. Chapin*, 12 Wis., 453; *Tallman v. Truesdell*, 3 Wis., 443; *Reed v. Catlin*, 49 Wis., 686, 691. The amount, therefore, fixed by the parties is not conclusive upon the defendant, and the amount to be recovered under such a stipulation must be fixed by the court or jury on the trial of the action.

In some of the states, viz., in Michigan and Kentucky, such stipulations are held void as contrary to public policy and the statutes regulating costs recoverable in actions. See *Bullock v. Taylor*, 39 Mich., 137; *Witherspoon v. Musselman*, 14 Bush, 214. In other states they are held binding, and as this court has held them valid in case of mortgages, to be consistent, they must be held valid when applied to the collection of money on notes or securities other than mortgages. It must be admitted, therefore, that a stipulation of this kind does render the amount recoverable on the notes uncertain when an action is brought upon them in this state. When the amount recoverable in an action upon a written contract, whether in the form of a promissory note or otherwise, is uncertain, such instrument is not negotiable,

is held by most of the courts which have considered the question.

In the opinion of the supreme court of Pennsylvania in *Woods v. North*, 84 Pa. St., 407, Justice SHARSWOOD, who delivered the opinion in that case, says: " But in the paper now in question there enters as to amount an undoubted element of uncertainty. It is a mistake to suppose that if this note was unpaid at maturity, the five per cent. would be payable to the holder by the parties. It must go into the hands of an attorney for collection. It is not a sum necessarily payable. The phrase 'collection fee' necessarily implies this. Not only so, but this amount of percentage cannot be arbitrarily determined by the parties. It must be only what would be a reasonable compensation to an attorney for collection. This, in reason and usage of the legal profession, depends upon the amount of the note. . . . How, then, can this note be said to be certain as to its amount, or an amount unaffected by any contingency? Interest and costs of protest, after nonpayment at maturity, are necessary legal incidents of the contract, and the insertion of them in the body of the note would not affect its negotiability. . . . But a collateral agreement, as here, depending, too, as it does, upon its reasonableness, to be determined by the verdict of a jury, is entirely different. . . . If this collateral agreement may be introduced with impunity, what may not be?" To the same effect upon the same point are *Garretson v. Purdy* (Dakota), 14 N. W. Rep., 100; *Jones v. Radatz*, 27 Minn., 240; *First Nat. Bank v. Gay*, 63 Mo., 38; *Hardin v. Olson*, 14 Fed. Rep., 705; *First Nat. Bank v. Bynum*, 84 N. C., 24.

In a late case in the supreme court of Maryland the rule laid down in the cases above cited is approved and followed, after a full consideration of the cases holding a contrary doctrine. *Maryland F. & M. Co. v. Newman*, 60 Md., 584. In this case, the court say that, to constitute a note ne-

gotiable under the law merchant, it is essential that the promise must be "to pay a certain sum of money unconditionally." The court further say: "It is of great importance to the use and office of such commercial negotiable instruments as bills and notes, that they should be kept free of all conditions, and singular and unusual stipulations, such as we find on the face of the note in question, whereby their negotiability might be seriously clogged or impeded. . . . In the note declared on in this case, the stipulation for the payment of all costs and charges incurred in the collection of the note introduces an element of uncertainty quite inconsistent with the degree of certainty required as to the sum to be paid. The costs and charges of collection could never with accuracy be known until the collection had been made complete; and hence, by computing the certain sum mentioned in the note with that which is uncertain, and treating the note as an entire contract, it is for an uncertain sum, and therefore uncertain on its face as to the amount proposed to be paid. This, as we have seen, is not allowable in notes intended to be negotiable."

The condition in the note in question in the case in the Maryland court was as follows, after promising to pay a certain fixed sum on a day certain: "And if not paid when due, promised and agreed to pay all costs and charges for collecting the same, with interest." The effect of the condition in the notes in the case at bar is the same as in the Maryland case, for although the condition is to pay "ten per cent. for collection fee," yet this stipulation as to collection fee must be construed, according to the rule laid down by this court, to mean a reasonable collection fee not exceeding ten per cent., and so becomes just as uncertain as the stipulation in the Maryland case and the other cases above cited.

The following cases hold that a stipulation in a note to pay collection fees, either of designated or uncertain amount,

in case suit be brought to recover the amount due on the note, does not take away its negotiability. *Stoneman v. Pyle*, 35 Ind., 103; *Wyant v. Pottorf*, 37 Ind., 512; *Sperry v. Horr*, 32 Iowa, 184; *Seaton v. Scoville*, 18 Kan., 433; *Dietrich v. Bayhi*, 23 La. Ann., 767. These last cases place their decisions upon the ground that it is sufficient if the amount is certain which will discharge the note if paid when due, and that any stipulations which render the amount uncertain only in case payment is not made until after the same is past due, does not take away the negotiability of the note.

We think the rule laid down by the courts which hold the notes not negotiable when the amount recoverable by action is not certain and fixed, is the better rule, and that the public interests require that negotiable promissory notes should not be connected with other collateral agreements which render the amount recoverable thereon uncertain. If the interests of manufacturers and vendors of manufactured articles require the taking of instruments of the kind in suit in this case, they should be compelled to take them subject to all the equities which exist between the parties, and they should not be permitted to avoid those equities by treating them as negotiable notes. If they embody in them stipulations or agreements which are not negotiable, it is but just to hold the whole instrument not negotiable.

In this view of the case it becomes unnecessary to decide what effect, if any, the stipulation in the chattel mortgage, that if the first note was not paid when due the other two should become payable immediately thereafter, would have upon the negotiable character of the notes, nor whether the holder of the notes is in a situation to avail himself of that stipulation in an action at law to recover the amount due on the notes. Holding that the notes were not negotiable upon their face, we may admit, for the purposes of this appeal, that the action was not prematurely brought upon the second

and third notes; and still it follows that the court did not err in permitting the defendants to prove their defense to the plaintiff's action.

Some exceptions were taken to evidence offered by the defendants. We are clear that the court properly overruled the objection to such evidence. We are also very clear that the court did not err in refusing to hold, as a matter of law, that the defendants had waived their right to return the machine to the vendors, under the conditions of the contract, by an unreasonable delay. That was clearly a question for the jury under the evidence. The facts proved do not bring the case within the rule laid down by this court in the cases of *Boothby . v. Scales*, 27 Wis., 626; *Paige v. McMillan*, 41 Wis., 337; and *Gammon v. Abrams*, 53 Wis., 323. In these cases this court says that " the general rule is, however, that the vendee must proceed with reasonable diligence to test the article, and if it proves defective must promptly notify the vendor of the defects therein, and offer to return it." These cases also hold that what is reasonable diligence in this matter is usually a question of fact for the jury, and not for the court; and it is only where the delay to return, or offer to return, is long continued after ·the defect complained of is discovered, that the court will hold as a matter of law that the right to return is lost. The evidence in this case does not show such delay in notifying the vendors of the defects in the machine, or in returning the machine after it was ascertained that the defects had not been removed by the agent of the vendors, as would justify the court in deciding as a matter of law that the right to return had been waived or forfeited by the purchasers.

We find no errors in the record which would justify this court in reversing the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.