## Schlesinger v. Arline and others.

*(Circuit Court, S. D. Georgia, W. D.  June 27, 1887.)*

1. Negotiable Instrument — What is — Stipulation for Costs and Attorney's Fees.

A promise to pay in these words: "Four months after date we promise to pay to the order of M. Nussbaum & Co., $539.46, for value received, payable at the Exchange Bank, Macon, Ga., with interest from March ——, at the rate of eight per cent. per annum, with all costs of collection, including ten per cent. attorney's fees. [Signed] T. C. Arline & Co.,"—is negotiable by the law-merchant. The conflicting authorities upon the question of negotiability, as affected by the presence of stipulations to pay costs, attorney's fees, etc., cited.[1]

[1] See note at end of case.

2. SAME.

The tendencies of the courts have been to enlarge the rule as to negotiability; and stipulations which do not render uncertain the amount to be paid, or the time of payment, but which tend to increase the value of the instrument, do not impair its negotiability.

3. SAME—WAIVER OF EXEMPTION.

Nor does a waiver of state homestead or exemption laws impair the negotiability.[1]

(*Syllabus by the Court.*)

Action on Promissory Notes.

*Hill & Harris,* for plaintiff.

*Dessau & Bartlett,* for defendant.

SPEER, J. The plaintiff brings his action on a promissory note written in the following language:

"Four months after date we promise to pay to the order of M. Nussbaum & Co., $539.46, for value received, payable at the Exchange Bank, Macon, Ga., with interest from March ——, at the rate of eight per cent. per annum, with all costs of collection, including ten per cent. attorney's fees.

[Signed]     "T. C. ARLINE & CO."

The plaintiff, who sues as indorsee, having taken the note by assignment from Nussbaum who was the payee, is a non-resident of this state, but Nussbaum resides here. The defendants demur to the declaration, and to the jurisdiction of the court, because the suit is by an assignee, when the assignor could not have sued because of his residence in the same state with the defendants, and insist that the note sued on is not negotiable by the law-merchant, because it contains a provision that the maker shall pay all costs of collection, including 10 per cent. attorney's fees. It is conceded, of course, under the circumstances, that we have no jurisdiction of the action unless the note is negotiable by the law-merchant. The demurrer presents a question upon which the decisions of the courts have been very conflicting.

A promissory note, or note of hand, as it is often called, is an open promise in writing by one person to pay to another person, or to his order, or to bearer, a specified sum of money absolutely and at all events. Daniel, Neg. Inst. § 28. "In order to fulfill the definition given, the paper must carry its full history on its face, and embrace the following requisites: *First,* it must be open,—that is, unsealed; *second,* the engagement to pay must be certain; *third,* the fact of payment must be certain; *fourth,* the amount to be paid must be certain; *fifth,* the medium of payment must be money; *sixth,* the contract must be only for the payment of money; and, *seventh,* it is essential to the operation of the instrument that it should be delivered." Daniel, Neg. Inst. § 30.

The defendants insist in this case that two requisites are wanting: (1) That the amount to be paid is uncertain; and (2) the contract contains stipulations other than for the payment of money.

The defendants strongly rely on *Smith* v. *Nightingale,* 2 Starkie, N. P.

[1] See Cayuga Co. Nat. Bank v. Purdy, (Mich.) 22 N. W. Rep. 93.

375, where Lord ELLENBOROUGH held that an instrument wherein the promise "to pay J. S. the sum of sixty-five pounds or lawful interest for the same, and all other sums which should be due to him," was not a promissory note. Byles, Bills, 147. This is clearly indefinite. Lord KENYON in *Carlos* v. *Fancourt*, 5 Term R. 483, observed:

"It would perplex commercial transactions if paper securities of this kind were issued into the world incumbered with conditions and contingencies, and if the person to whom they were offered in negotiation were obliged to inquire when these uncertain events would probably be reduced to a certainty."

Defendants also cite *Thompson* v. *Sloan*, 23 Wend. 71, to show that a promise to pay a certain sum in Canada money is not negotiable, and 1 Pars. Notes & B. 37, where it is declared the maxim *id certum est, quod certum reddi potest*, has no application to the question of negotiability by the law-merchant, is also cited.

In *Ayrey* v. *Fearnsides*, 4 Mees & W. 168, PARKE, B., held that the words, "and all fines according to rule," destroyed the negotiability. That eminent judge makes it plain, however, that the word "fines" might import pecuniary fines and forfeitures, and was altogether indefinite.

Leading Cases upon Bills of Exchange and Promissory Notes, by Redfield & Bigelow, page 10, is cited for the dissenting opinion of CAMPBELL, J., in *Baxter* v. *Stewart*, 4 Sneed, 213; and *Hughitt* v. *Johnson*, 28 Fed. Rep. 865, is cited for the opinion of Judge BREWER, who holds that a note is rendered non-negotiable by the incorporation therein of an agreement to pay the sum named, "with exchange." This case, however, is overborne by the mass of authority cited by Mr. Daniel in his admirable work on Negotiable Instruments, § 54, and note.

In *First Nat. Bank of New Windsor* v. *Bynum*, 84 N. C. 24, reported in 37 Amer. Rep. 604, the counsel fees and expenses of collection were promised, but were left altogether uncertain, and the time of payment, which is also important, was left to the option of the payees. There the note was held non-negotiable.

In *First Nat. Bank of Stillwater* v. *Larsen*, 60 Wis. 206, 19 N. W. Rep. 67, it is decided squarely for the defendants that a provision for the payment of 10 per cent. attorney's fees for collection destroys the negotiability of the note; and this decision is placed upon the authority of the opinion of Mr. Justice SHARSWOOD in *Woods* v. *North*, 84 Pa. St. 407, and *Maryland F. & M. Co.* v. *Newman*, 60 Md. 584, 45 Amer. Rep. 750.

Justice SHARSWOOD had to consider a 5 per cent. attorney's fee, and he intimates that it is possible the attorney might ask more, rendering the amount promised uncertain. It seems, however, the maker would not be liable for such excess. In the Maryland case, which, from the high character of the court, is entitled to very careful consideration, the promise was to pay all costs and charges for collecting the same, with interest, and the authorities *pro* and *con* are collated with the usual fairness of that distinguished tribunal. The court there declares "the cost and charges of collection could never with accuracy be known until the collection had been made complete; and hence, by coupling the certain sum mentioned in the note with that which is uncertain, and treating

the note as an entire contract, it is for an unascertained sum, and therefore uncertain on its face as to the amount promised to be paid. This, as we have seen, is not allowable in notes intended to be negotiable." Here the terms "costs and charges" were apparently understood by the court and counsel to mean all the expenses of the litigation.

It will be, however, perceived that all of these cases, except that from Wisconsin, are distinguishable from the note before us. Here the promise is to pay 10 per cent. attorney's fees. This I think is definite and fixed, so far as the maker of the note is or can be affected, and the word "costs" imports the expenses of the suit which may be recovered by law from the losing party. Bouv. Law Dict. tit. "Costs." This being the proper construction the words are merely surplusage, because it follows necessarily that, in case of suit, the costs at law fall upon the losing party. See *Davis* v. *State*, 33 Ga. 531; *Wetherbee* v. *Kusterer*, 41 Mich. 359, 2 N. W. Rep. 45.

It follows, then, that the amount promised by the note is definite and fixed; the promise of the makers to pay 10 per cent. attorney's fees excludes the possibility that they could be held to pay more or less than that amount.

The note can very well represent money effectually, and there is no chance of mistake as to the amount of money of which it takes the place and performs the function, and this perfects its negotiability.

Mr. Daniel, in his work on Negotiable Instruments, before quoted, page 73, argues that when the amount of fees is fixed by a certain percentage or certain sum, as in many cases, the objection to the negotiability of the paper becomes exceedingly technical and sophistical, and it is only when their amount is left undetermined that such objection seems to be forcible. See, also, *Adams* v. *Addington*, 16 Fed. Rep. 89. The waiver of exemption and homestead in the note does not affect the amount or the time of payment, and therefore does not affect negotiability. *Zimmerman* v. *Anderson*, 67 Pa. St. 421; Daniel, Neg. Inst. § 61 *et seq.*

I think all the tendencies of law have been to enlarge the rules relating to the negotiability of promissory notes. It was strenuously denied by Lord Holt that they were negotiable at all at common law, and he said that the effort to place them on the same footing as bills of exchange "proceeded from the obstinacy and opinionativeness of the merchants, who were endeavoring to set the law of Lombard street above the law of Westminster Hall." The merchants, however, had their way, and parliament put promissory notes on the same footing with bills of exchange in the time of Queen Anne, (1705.)

In this case I am the more inclined to hold the instrument negotiable, and maintain the jurisdiction of the court, in the absence of controlling authority to the contrary, because upon principle it would seem that, where there are stipulations which provide for the payment of a fixed and certain per cent. for attorney's fees, and a waiver of those exemptions which tend to delay and defeat payment, such stipulations and waivers largely enhance the value of the note, which is, after all, a main

element of negotiability, and there is no reason, save the authority of certain state courts, why the federal courts should deny to suitors otherwise competent to sue the right to collect these demands now so numerous in the national tribunals. Besides, this is a question of general commercial law, and the federal courts are controlled by the general principles of jurisprudence, and are not bound by the decisions of the courts of the state even where the federal court is held.

For these reasons the demurrer is overruled.

## NOTE.

NEGOTIABILITY—ATTORNEY'S FEES. A stipulation to pay a reasonable attorney's fee in case a promissory note or other contract is not performed according to its terms, and the party entitled to demand such performance is compelled to enforce it by law, is just and valid. Wilson Sewing-Machine Co. v. Moreno, 7 Fed. Rep. 806; Johnston Harvester Co. v. Clark, (Minn.) 15 N. W. Rep. 252. A promissory note containing such a provision is negotiable under the law-merchant. Adams v. Addington, 16 Fed. Rep. 89. Indorsers are liable for the payment of stipulated attorney's fees in case suit should be instituted for the payment of the note. Bank of British N. A. v. Ellis, 2 Fed. Rep. 44.

Such stipulations have been held to destroy the negotiability of the note. *Dakota*, Garretson v. Purdy, 14 N. W. Rep. 100. *Minnesota*, Hardin v. Olson, 14 Fed. Rep. 705; Jones v. Radatz, 6 N. W. Rep. 800. *Wisconsin*, First Nat. Bank v. Larsen, 19 N. W. Rep. 67.

But it has been held that a stipulation in a promissory note to pay a reasonable attorney's fee for instituting a suit on the note, in addition to legal interest, is unauthorized by law, and void. Dow v. Updike, (Neb.) 7 N. W. Rep. 857. A provision in a promissory note "to pay an attorney's fee of 10 per cent. on the account due if suit is brought to enforce payment, for use of the attorney bringing the suit," is a stipulation for a penalty of forfeiture, and tends to the oppression of the debtor; is a cover for usury, and is without consideration and contrary to public policy. Merchants' Nat. Bank v. Sevier, 14 Fed. Rep. 662, and see note.

See generally, as to the negotiability of commercial paper, Hughitt v. Johnson, 28 Fed. Rep. 867, and note; McComas v. Haas, (Ind.) 8 N. E. Rep. 582, and note; Chandler v. Carey, (Mich.) 31 N. W. Rep. 309, and note.