FIRST NATIONAL BANK OF SHAWANO, WISCONSIN, Appellant, vs. MILLER, Respondent.

*March 30—April 20, 1909.*

*Bills and notes: Construction: Attorney's fees: Negotiability: Certainty as to amount: Statutory provisions: Negotiable Instrument Law: Notice of dishonor: Time: Sufficiency*

1. A provision in a note for "ten per cent. attorney's fees if collected by an attorney, or if suit is brought upon this note," is a promise to pay attorney's fees only on collection by an attorney after dishonor, and the note is a negotiable instrument.

2. In all situations where the Negotiable Instrument Law (ch. 356, Laws of 1899) conflicts with the adjudications of the supreme court, as to instruments made subsequent to its passage the former prevails.

3. Under sec. 1678—34, Stats. (ch. 356, Laws of 1899), notice of dishonor of a negotiable note is too late, where the notice with insufficient postage was deposited in the postoffice after ordinary business hours and the closing of the mail on the business day succeeding dishonor, and was not again sent on with sufficient postage until five days after its return by the postal authorities.

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Action to recover of an indorser on an instrument of which the following is a copy:

"Shawano, Wis., Feb. 24, 1905. $140.00.

"One year after date for value received I promise to pay John Popp, or order, at the *First National Bank,* one hundred forty dollars, with interest at the rate of 6 per cent. per annum from date until paid and 10 per cent. attorney's fees if collected by attorney, or if suit is brought upon this note. Value received. PAUL ANKER."

Indorsed on back across same:

"John Miller.
"John Popp.
"Without recourse."

The instrument sued on was duly made and delivered so as to take effect according to its tenor, the same being, before

·delivery, duly indorsed by defendant. Before maturity the instrument was placed with plaintiff for collection in due ·course, the cashier being informed, at the time, of defendant's residence. At the time the indorsement was made the payee was informed that the defendant received his mail by rural free delivery and as to the route reaching plaintiff. Independently of that, the payee knew the facts of which he was so informed and the cashier also knew where defendant resided. All mail with postage prepaid deposited in the postoffice before 9 :25 a. m. on any week day for persons residing on the particular route was customarily delivered on the same day. The note was dishonored Saturday, February 24, 1906. Notice thereof with one cent postage paid, whereas two cents was required, was deposited in the postoffice the evening of the following Monday. It was immediately placed with plaintiff's mail for return because of the insufficient postage and was received by it, in due course, the following day. On the fifth day thereafter, between 6 and 8 p. m., the notice was again deposited in the postoffice, properly addressed and post-age properly paid. Thereafter the paper was, for value, sold and duly indorsed to plaintiff without recourse, and defendant refused payment because he was not properly notified of the dishonor.

On such facts the court decided that the instrument was a negotiable promissory note and that defendant was not liable because notice of dishonor was not properly given. Judgment was rendered accordingly.

For the appellant the cause was submitted on the brief of *Wallrich, Dillett & Larson.*

For the respondent there was a brief by *Eberlein & Eberlein,* and oral argument by *M. J. Eberlein.*

MARSHALL, J. The court is of the opinion that, by the fair meaning of the instrument sued on, payment of attorney's fees was provided for only on collection by an attorney

after dishonor. That would seem to be the case as an original matter, and like clauses in similar instruments have uniformly received that construction, as indicated in cases cited to our attention and others: *Sperry v. Horr,* 32 Iowa, 184; *Shenandoah Nat. Bank v. Marsh,* 89 Iowa, 273, 56 N. W. 458; *Farmers' Nat. Bank v. Sutton Mfg. Co.* 52 Fed. 191.

Such being the case the instrument was negotiable under sec. 1675—2 of the Negotiable Instrument Law (ch. 356, Laws of 1899), providing that "the sum payable is a sum certain . . . although it is to be paid . . . with costs of collection or an attorney's fee, in case payment shall not be made at maturity." That was considerately designed to supersede the judicial rule in *Morgan v. Edwards,* 53 Wis. 599, 11 N. W. 21; *First Nat. Bank v. Larsen,* 60 Wis. 206, 19 N. W. 67; *Peterson v. Stoughton State Bank,* 78 Wis. 113, 47 N. W. 368; *W. W. Kimball Co. v. Mellon,* 80 Wis. 133, 48 N. W. 1100, and similar cases.

In all situations where the Negotiable Instrument Law passed in 1899 conflicts with our adjudications, as to instruments made subsequent to that time the former rules.

When the Negotiable Instrument Law was enacted a conflict of judicial authority on the subject in hand and others existed. In some states a clause similar to that here was held to render the amount payable on the instrument uncertain and to destroy its negotiability. In many other states the obligation as to costs of collection was held to be contingent upon collection after dishonor, to appertain to the remedy for a breach of the primary contract, not to the debt itself, and, therefore, not to render the amount uncertain, militating against negotiability. To supersede the conflict by a general rule the provision of the Negotiable Instrument Statute quoted was incorporated therein.

The law relating to proceedings to fix the liability of an indorser of a promissory note, in case of dishonor by the maker, was different in some states than in others, and for harmony

on that as to the time and manner of giving notice of dishonor to the indorser it was provided by sec. 1678—34 of the Negotiable Instrument Statute that "Where the person giving and the person to receive notice reside in different places, the notice must be given . . . if sent by mail" by depositing it "in the postoffice in time to go by mail the day following the day of dishonor, or, if there be no mail at a convenient hour on that day, by the next mail thereafter." Here notice was not sent till after time for mail on the first secular day after dishonor though there was ample opportunity to do so. The departure time for the mail was between 9 and 10 o'clock of such day. That was certainly a convenient time within the meaning of the statute. No excuse is found in the evidence for not depositing the notice with postage fully paid so as to have reached the respondent by such mail. The deposit on the evening of that day, after ordinary business hours and long after the closing of the mail for such day, as regards the route by which it must have been known the notice would reach respondent, if at all, clearly was too late. If that were not so, failure to prepay the postage so notice would go out by the next mail and failure to remedy the mistake after knowledge thereof for several days thereafter released the indorser beyond any possible question.

*By the Court.*—Judgment affirmed.