GOLD STANDARD ENTERPRISES, INC., Plaintiff-Appellee, v. UNITED INVESTORS MANAGEMENT COMPANY, a division of United Investors, Inc., Defendant-Appellant.

First District (4th Division) No. 1—88—1075

Opinion filed April 20, 1989.

Alexander G. Poulakidas, of Chicago, for appellant.

Jack J. Herman, P.C., of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Gold Standard Enterprises, Inc., is the lessee under a lease with defendant, the United Investors Management Company, the lessor. Plaintiff brought an action in the circuit court of Cook County against defendant. Plaintiff sought the specific performance of a lease provision that granted it the option to extend the lease. The trial court granted plaintiff's motion for summary judgment and denied that of defendant. Defendant appeals, contending that the trial court erred in granting summary judgment for plaintiff.

We affirm the judgment of the trial court.

BACKGROUND

A

The record contains the following undisputed facts. On January 26, 1976, plaintiff entered into a lease agreement with the J.M.B. Property Management Corporation. Plaintiff rented space to operate a retail store in the Hubbard Woods Shopping Center, located at 71 Linden Avenue, in Glencoe, Illinois. The lease had a term of 10 years, from August 1, 1976, to July 31, 1986. The lease prescribed a fixed monthly rent increasing annually, from $800 in the first year to $1,250 in the tenth year, plus an additional amount based on a percentage of plaintiff's gross sales, which also increased annually.

The lease granted plaintiff an option to extend, which provided in pertinent part:

"Section 26.14. Option to Extend

If the Lease is otherwise then in effect and if Lessee is not in default thereunder, Tenant shall have and is hereby given the option to renew this Lease for two (2) five (5) year terms. If Tenant desires to exercise this option. Tenant shall give written notice of such exercise to Landlord not later than ninety (90) days prior to said term's commencement date."

The lease additionally prescribed the means of giving notice:
"Section 26.06. Notices

Any notice, demand, request or other instrument which may be or are required to be given under this lease shall be delivered in person or sent by United States certified mail postage prepaid and shall be addressed (a) if to Owner at the address first hereinabove given or at such other address as Owner may designate by written notice and (b) if to Tenant at the leased premises or at such other address as Tenant may designate by written notice."

Defendant, the United Investors Management Company, is a division of United Investors, Inc. Alexis Giannoulias is the president and sole stockholder of defendant. The J.M.B. Property Management Corporation subsequently sold the shopping center, and assigned the lease, to defendant. Defendant thereby became plaintiff's lessor.

## B

As stated earlier, the lease was due to expire on July 31, 1986. The extended lease term was due to begin on August 1. Therefore, as provided by the lease, plaintiff's option to extend expired 90 days earlier, on May 2. Harold Binstein, president of plaintiff, instructed his attorney, Herbert De Young, to send the requisite notice to defendant extending the lease. On April 21, De Young and Joyce Hegner, his secretary, prepared the notice. Hegner addressed an envelope, prepared a certified mail return receipt card, and affixed to the envelope $1.67 in postage.

On April 22, a United States Postal Service letter carrier delivered the certified letter containing plaintiff's notice to defendant. Someone at the post office had already stamped and written on the letter "POSTAGE DUE *20¢*." Defendant's receptionist was alone in the company's office. The receptionist looked at the envelope and told the letter carrier that she had no money. Additionally, defendant kept no money in its office. The letter carrier prepared a notice ("pink slip"), which informed defendant to pick up the letter at the post office. He attached half of the notice to the letter and he left the other half with the receptionist. The letter carrier returned the letter to the post office.

It is also undisputed that defendant never attempted to collect the letter. Defendant received its first notice on April 22, 1986. Defendant received a second notice on April 28. The option to extend expired on May 2. The post office returned the letter to plaintiff on May 7.

On May 14, 1986, Giannoulias wrote to Binstein to inform him that the option to extend the lease had expired. Defendant's letter had $1.67 in postage affixed, as did plaintiff's April 21 letter. The post office, however, delivered defendant's letter without postage due. De Young wrote to Giannoulias on May 22, stating that he sent a notice to extend the lease on April 21; he enclosed a copy of the notice with the letter. Giannoulias replied by letter that no copy of the notice was enclosed with De Young's May 22 letter. De Young wrote to Giannoulias again on May 27, stating that he personally enclosed a copy of the notice with his previous letter, but he also enclosed another copy of the notice with this last letter. Giannoulias subsequently offered plaintiff a new lease at a rent significantly higher than the rate prescribed by the existing lease.

## C

Plaintiff brought this action for specific performance on June 5, 1986. Plaintiff subsequently tendered to defendant an amount representing the August 1986 rent under the lease's extended term. Defendant rejected the tender and brought a forcible entry and detainer action against plaintiff on August 19, 1986. On September 9, plaintiff moved for a preliminary injunction, to prevent defendant from proceeding with its forcible entry and detainer action, or attempting in any other way to obtain possession of or interfere with plaintiff's use of the premises. The trial court continued the forcible entry and detainer action until after the hearing on the preliminary injunction motion, and also ordered plaintiff to continue paying the prescribed rent to defendant.

On the day of the preliminary injunction hearing, the trial court granted defendant leave to file a motion for summary judgment on plaintiff's action for specific performance, granted plaintiff leave to file a cross-motion for summary judgment, and continued the forcible entry and detainer suit until after the disposition of the summary judgment motions. On March 11, 1987, the trial court granted plaintiff's motion for summary judgment and denied that of defendant. Defendant appeals.

OPINION

■ In reviewing a trial court's order of summary judgment, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch.

110, par. 2—1005(c).) Summary judgment is the proper remedy where only the construction and legal effect of a lease are at issue. *Ohio Oil Co. v. Yacktman* (1976), 36 Ill. App. 3d 255, 261, 343 N.E.2d 544, 549.

In the case at bar, plaintiff conceded that it did not strictly follow the lease. Paragraph 26.06 of the lease required notices by the parties to "be delivered in person, or sent by United States certified mail postage prepaid." It is undisputed that plaintiff's April 21, 1986, letter, containing the notice to extend, had insufficient postage affixed. Thus, plaintiff did not prepay the postage and thereby violated the lease provision. It is further undisputed that defendant did not formally receive the notice to extend until after the prescribed time expired.

■■ Generally, an option to renew or extend a lease must be exercised in accordance with the agreement of the parties. Where the only condition of such a right to extend is that it be exercised within the time specified by the parties, a court will strictly construe the time requirement and enforce the agreement of the parties. *La Salle National Bank v. Graham* (1983), 119 Ill. App. 3d 85, 86, 456 N.E.2d 323, 324.

This general rule was set down in *Dikeman v. Sunday Creek Coal Co.* (1900), 184 Ill. 546, 56 N.E. 864. The supreme court stated:

> "The contract sought to be enforced gave an option or privilege to the lessee to extend the lease for a new term of ten years by giving notice of an election to do so twenty days before the termination of the lease. This was the sole condition upon which the option rested, and it was not complied with through the negligence of the lessee. The question here is, whether a court of equity can relieve against the consequences of such negligence. In a court of law the time for the performance of an act is as essential as any other part of the contract. *** Equity maintains a somewhat different rule,—that time is not necessarily of the essence of a contract; and if it is not of the essence of an agreement, and a party has acted in good faith in a meritorious cause, equity may grant relief. Parties have a right, however, to make their own contracts, and if they intend that time shall be of the essence of the contract, either by the express form of their agreement or because the subject matter makes it so, a court of equity will treat it as of the essence and hold the parties to their agreement. A court of equity is bound by a contract as the parties have made it, and has no authority to substitute for it another and different agreement, and particular language is not necessary to make the

time of performance essential, if right and justice in the individual case demand it. An agreement must be complied with as made *unless* some stipulation is waived or *there is a just excuse for non-compliance*. (Emphasis added.) (184 Ill. at 550-51, 56 N.E. at 865.)

The supreme court denied the tenants specific performance of the option to renew their lease. The court reasoned that equity could not excuse their failure to give the agreed notice due to their own carelessness.

■ Plaintiff acknowledges a violation of the lease. However, plaintiff invokes a well-established equitable principle to justify specific performance of the lease's option to extend. The principle is that equity will relieve against the unjust consequences of accident. Indeed, accident is one of the most ancient bases of equity jurisdiction. The rationale of the rule is that, in good conscience, plaintiff should be restored to a right lost, or relieved from a liability incurred, by reason of an event that the parties did not contemplate and not due to plaintiff's negligence or fault. (30 C.J.S. *Equity* §46 (1965); 3 J. Pomeroy, Equity Jurisprudence §§823, 824 (5th ed 1941).) Illinois courts recognize this general principle. 7 Ill. L. & Prac. *Chancery* §55 (1954).

■ Where a tenant is given a right to renew a lease upon notice to the landlord, and where the tenant fails to give the required notice, equity will relieve the tenant from the consequences of his failure if accident, fraud, surprise, mistake, or other source of equitable jurisdiction is present. (2 J. Pomeroy, Equity Jurisprudence §453b (5th ed. 1941).) Even in *Dikeman v. Sunday Creek Coal Co.*, our supreme court recognized that equity may grant relief where "there is a just excuse for non-compliance." (*Dikeman*, 184 Ill. at 551, 56 N.E. at 865.) We expressly relied on this exception to grant specific performance to a tenant in similar circumstances in *Providence Insurance Co. v. La Salle National Bank* (1983), 118 Ill. App. 3d 720, 455 N.E.2d 238. Additionally, we agree with the New York Court of Appeals that, absent negligence by the sender, if reliance on the mails could possibly be characterized as fault, then it is an excusable fault. *Sy Jack Realty Co. v. Pergament Syosset Corp.* (1971), 27 N.Y.2d 449, 453, 318 N.E.2d 720, 722, 267 N.Y.S.2d 462, 464.

■ Applying these principles to the case at bar, we conclude that the trial court properly granted specific performance for plaintiff. Indeed, this is a classic case for equitable relief. The undisputed facts are that the deadline for renewing the lease was May 2, 1986. De Young mailed plaintiff's April 21 letter, containing the notice to renew, in ample time to effectuate the renewal. Further, the letter

reached defendant's office the next day. However, defendant did not formally receive the letter because 20¢ postage was due. There is no doubt that this uncontemplated event was an accident. The record contains uncontradicted evidence that the post office delivered De Young's previous letters affixed with $1.67 in postage. Additionally, the post office delivered Giannoulias' May 14 letter to De Young, which was affixed with $1.67 in postage.

True, the record shows that the rental value of the leased premises has appreciated in today's market. Defendant could charge a higher rent under a new lease. However, the record contains no evidence that the actual delay in receiving the notice, by itself, harmed defendant. Based on these uncontradicted facts, in addition to justice and fairness, we hold that plaintiff was entitled to specific performance.

Defendants attempt to manufacture genuine issues of material fact from the evidence and contradictory inferences arising from the evidence to defeat a summary judgment. These issues include: whose fault was it that the April 21 letter had 20¢ postage due; whether defendant's receptionist saw plaintiff's name on the envelope; whether defendant received the second notice from the post office to pick up plaintiff's letter; and the amount of potential rent that defendant lost due to the lease extension.

■ Although a trial court should construe the facts liberally in favor of the nonmovant in considering a motion for summary judgment, the court need not strain to adduce some remote factual possibility that will defeat the motion. (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 145, 407 N.E.2d 1031, 1033.) As noted above, the pertinent facts are undisputed. Based on these facts, plaintiff is entitled to a judgment as a matter of law. Accordingly, we uphold the trial court's grant of summary judgment for plaintiffs.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.