**TENASKA FRONTIER PARTNERS, LTD., Appellant**

v.

**Bill SULLIVAN, In His Official Capacity as Tax Collector for Grimes County, Anderson–Shiro Consolidated Independent School District and Grimes County, Appellees.**

No. 14–07–01042–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 13, 2008.

Rick L. Duncan and John Brusniak Jr., for Tenaska Frontier Partners, Ltd.

Michael Reed and Matthew Tepper, for Bill Sullivan, In His Official Capacity as Tax Collector for Grimes County, Anderson–Shiro Consolidated Independent School District and Grimes County.

Panel consists of Chief Justices HEDGES, and Justices BROWN and BOYCE.

## OPINION

JEFF BROWN, Justice.

After the *ad valorem* tax payment owed by Tenaska Frontier Partners, Ltd., was returned as undeliverable for insufficient postage, appellee Bill Sullivan—in his capacity as Grimes County tax collector—marked Tenaska's payment as delinquent and assessed $159,158.66 in penalties and interest. The trial court upheld the assessment by summary judgment, and Tenaska appealed. We affirm.

## BACKGROUND

Tenaska owns real property in Grimes County that is subject to *ad valorem* taxation. On January 30, 2006, Tenaska attempted to pay its 2005 taxes by mailing a check in the amount of $2,273,695.59 in an envelope properly addressed to the Grimes County Appraisal District ("GCAD"), and bearing a 39–cent first-class stamp. Because of the weight of the parcel, however, the correct amount of postage owed was 63 cents. Accordingly, on February 4 the envelope was returned to Tenaska, marked as undeliverable because of the 24–cent postage deficiency. On February 7, Tenaska re-sent its payment, which the appraisal district received on February 8th. Because a preceding year's tax payments must be made on or before February 1 of the following year,[1] Sullivan posted this February 7 payment as delinquent and assessed $159,158.66 in penalties and interest.[2] Under protest, Tenaska paid the ad-

---

1. Tex. Tax Code Ann. § 31.02(a) (Vernon 2008).

2. *See id.* § 33.01.

ditional assessment and applied for a tax refund.[3] Sullivan denied the refund application, and Tenaska filed suit against Sullivan, Grimes County, and Anderson–Shiro Independent School District.

The parties filed cross-motions for summary judgment. On November 9, 2007, the trial court denied Tenaska's summary judgment motion, and granted the appellees' motion. This appeal followed. Tenaska now asks us to hold that a tax payment mailed with insufficient postage is nonetheless timely under section 1.08 of the Tax Code. We decline this invitation, and affirm the trial court's judgment.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve any doubt in the non-movant's favor. *Id.* When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we will review all summary-judgment evidence and determine all questions presented. *See id.* If we find that the trial court erred, we will render the judgment that the trial court should have rendered. *Id.* Here, the trial court did not state its specific grounds for granting Sullivan's summary judgment. We may therefore affirm the trial court's ruling if any of the theories presented in the motion for summary judgment are meritorious. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872–73 (Tex.2000).

## TIMELINESS OF TENASKA'S TAX PAYMENTS

■ The Tax Code provides that a party may mail a tax payment, and that such payment is considered timely if:

3. *See id.* § 31.11.

4. Tenaska also produced undisputed testimony that its payment was deposited in the mail

(1) it is sent by regular first-class mail, properly addressed with postage prepaid; and

(2) it bears a post office cancellation mark of a date earlier than or on the specified due date and within the specified period or the property owner furnishes satisfactory proof that it was deposited in the mail on or before the specified due date and within the specified period.

Tex. Tax Code Ann. § 1.08 (Vernon 2008). The use of the word "and" indicates that a taxpayer must comply with *both* subsections (1) and (2) for its mailed payment to be timely. *See In re Brookshire Grocery Co.,* 250 S.W.3d 66, 69–70 (Tex.2008) (orig.proceeding); *City of Lubbock v. Adams,* 149 S.W.3d 820, 827 (Tex.App.-Amarillo 2004, pet. denied). We must determine, then, whether either of Tenaska's payments complied with section 1.08.

■ The February 7 payment was sent by UPS, not first-class mail, and did not bear a post office cancellation mark dated on or before February 1, the due date for Tenaska's tax payment. The February 7 payment, then, was not timely under section 1.08. *See id.; see also Tex. Workers' Comp. Comm'n v. Hartford Accident & Indem. Co.,* 952 S.W.2d 949, 952–53 (Tex. App.-Corpus Christi 1997, pet. denied) (holding that service by private courier is not equivalent to first-class mail). The real focus of the parties' disagreement is the timeliness of the January 30 payment.

■ Viewed in the light most favorable to Tenaska, the envelope containing the January 30 payment bore a post office cancellation mark of January 30, 2006, and therefore satisfied section 1.08(2).[4] *See*

on January 30. *See* Tex. Tax Code Ann. § 1.08(2).

Tex. Tax Code Ann. § 1.08(2). The first payment also appears to have been properly addressed,[5] and was affixed with a first-class stamp. The crux of this dispute, then, is whether insufficient postage constitutes "postage prepaid" under section 1.08(1). We hold that it does not.

The construction of a statute is a question of law that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In construing a statute, our primary objective is to determine and give effect to the Legislature's intent. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002). We begin by looking at the statute's plain and common meaning, because the presumption is that the Legislature intended the plain meaning of its words. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). If possible, then, we must ascertain the legislative intent from the statute's language, and without reference to extraneous matters for an intent the Legislature did not state. *See id.*

Although the term "postage prepaid" appears in at least forty-five Texas statutes, the Legislature has blessed neither "postage" nor "postage prepaid" with a statutory definition. When the Legislature fails to define a word or term, courts will apply its ordinary meaning. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993). When applying the ordinary meaning, courts may not by implication enlarge the meaning of any word beyond its ordinary meaning. *Id.* In determining the ordinary meaning of an undefined term, Texas courts have consulted the term's common-law usage, interpretation when used in other statutes, and definitions in secondary sources. *See, e.g., id.* at 938–40 (common-law usage); *Little v. State*, 246 S.W.3d 391, 400–01 (Tex.App.-

Amarillo 2008, no pet.) (common-law usage and construction in other statutes); *Williamson Pointe Venture v. City of Austin*, 912 S.W.2d 340, 344 (Tex.App.-Austin 1995, no writ) (Webster's Third New International Dictionary); *Aviles v. Aguirre*, No. 13–06–00495–CV, 2008 WL 384228, at *3 (Tex.App.-Corpus Christi Feb. 14, 2008, pet. filed) (mem.op.) (Black's Law Dictionary).

Tenaska suggests that "postage" is defined as "the charge for mailing an item," and "the stamps, labels, or printing placed on an item to be mailed as evidence of payment of this charge." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1068 (4th ed.2000). Similarly, Black's Law Dictionary defines "postage" as the "charges for postal service." BLACK'S LAW DICTIONARY 1166 (6th ed.1990). "Prepay," not surprisingly, means "to pay or pay for beforehand." AMERICAN HERITAGE DICTIONARY, at 2074.

The undisputed summary-judgment evidence shows that the charge for the U.S. Postal Service to mail Tenaska's January 30 tax payment was 63 cents. Tenaska did not prepay this charge, and, so, the postal service refused to deliver the parcel. "Postage prepaid," by its plain meaning, requires full payment of the postal charges. Because its payment was not sent with "postage prepaid," Tenaska's January 30 payment did not comply with section 1.08(1).

This conclusion comports with the common-law treatment of mailings sent with insufficient postage. *See Wesco Distrib., Inc. v. Westport Group, Inc.*, 150 S.W.3d 553, 561 (Tex.App.-Austin 2004, no pet.) ("[I]nsufficient postage meant ineffective notice."); *see also, e.g., Ex parte Bates*, 65 S.W.3d 133, 135 (Tex.App.-Amarillo 2001,

---

5. Although the address on the envelope is obscured by a "Return to Sender" sticker, Tenaska's payment check is addressed to GCAD at the same address listed in the initial tax statements.

no pet.) (refusing to apply "mailbox rule" absent proof of sufficient postage); *Arnold v. Shuck*, 24 S.W.3d 470, 472–73 (Tex.App.-Texarkana 2000, pet. denied) ("mailbox rule" not satisfied when party failed to demonstrate that proper postage was affixed); *Harris County Appraisal Dist. v. Dincans*, 882 S.W.2d 75, 79 (Tex.App.-Houston [14th Dist.] 1994, writ denied) ("[I]t is important to have the appraisal district prove that sufficient postage was placed on the envelope containing the notice[.]"). Other jurisdictions have also interpreted the term "postage prepaid" as requiring full postage.[6]

▌ Tenaska contends, however, that we should liberally construe a punitive taxing statute in the taxpayer's favor, citing *Bullock v. Statistical Tabulating Corp.* 549 S.W.2d 166, 169 (Tex.1977). *Bullock* provides that ambiguities in a taxing statute must be construed liberally in the favor of the taxpayer. *See id.* However, an unambiguous statute should be construed according to the language as written, using the literal text. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex.2006). We will resort to external sources of construction only when a statute is ambiguous.[7] *Id.* at n. 4.

▌ Tenaska does not argue that the term "postage prepaid" is ambiguous; to the contrary, Tenaska exhorts us to adopt the ordinary meaning of the term. Because section 1.08 is unambiguous, we do not consider rules of construction. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex.

1999); *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997).

Even were we to construe section 1.08 liberally, a liberal construction does not permit us to do violence to the statutory language. *Wesco*, 150 S.W.3d at 557. Tenaska would have us read section 1.08(1) as permitting a tax payment to be timely if "it is sent by regular first-class mail, properly addressed with [*some* ] postage prepaid." But we must presume that every word excluded from a statute (such as "some" qualifying "postage prepaid") was excluded for a purpose. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex.1995). Accordingly, we may not add words to a statute unless necessary to effectuate a clear legislative intent. *See Wesco*, 150 S.W.3d at 557 (citing *Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex.1988)). We are not aware of a clear legislative intent to except section 1.08 from the general rule that insufficient postage does not constitute "postage prepaid." Indeed, we presume the Legislature knows how courts have interpreted the words it uses. *See Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999); *Beatty v. Holmes*, 233 S.W.3d 475, 488 (Tex.App.-Houston [14th Dist.] 2007, pet. filed).

We must also presume that the Legislature intended a reasonable result. *See Wesco*, 150 S.W.3d at 557. We must consider the consequences of possible constructions, because we should not interpret a statute in a way that would lead to foolish or absurd results. *See id.* We

---

**6.** *See First Nat'l Bank v. Miller*, 139 Wis. 126, 120 N.W. 820, 821 (1909); *see also Gold Standard Enters., Inc. v. United Investors Mgmt. Co.*, 182 Ill.App.3d 840, 131 Ill.Dec. 261, 538 N.E.2d 636, 638 (1989) (finding that a party who affixed insufficient postage did not "prepay the postage"); *Comer v. Gohil*, 664 N.E.2d 389, 392 (Ind.Ct.App.1996) (same).

**7.** That a term like "postage prepaid" may be undefined does not render it ambiguous. *See, e.g., Smithwick v. State*, 762 S.W.2d 232, 234 & n. 1 (Tex.App.-Austin 1988, pet. ref'd) (citing *Ahearn v. State*, 588 S.W.2d 327, 338 (Tex.Crim.App.1979)).

believe that construing section 1.08 to consider undeliverable mail as "timely" would produce absurd consequences. Notwithstanding the U.S. Postal Service's justifiable refusal to deliver such a parcel, a tax payment that would never, and could never, arrive at the appraisal district because it bore inadequate postage would nonetheless be considered—under Tenaska's proposed interpretation—a timely and effective payment of taxes owed. *See Wesco,* 150 S.W.3d at 558. We cannot embrace an interpretation that would allow an appraisal district to *impose* taxes, but yet be unable to *collect* them.

Tenaska denies an improper motive to avoid paying taxes, and undoubtedly correctly asserts that its attachment of deficient postage was an "unintentional error." However, it is up to the Legislature, not this court, to change the plain meaning of the Tax Code. *See Polaris Inv. Mgmt. Corp. v. Abascal,* 892 S.W.2d 860, 862 (Tex. 1995) (orig.proceeding). We overrule Tenaska's first issue.

Tenaska raises a second issue contending that, because the additional assessment was erroneously imposed, it was entitled to a refund under section 31.11 of the Tax Code. Because of our resolution of Tenaska's first issue, we need not reach this second issue.

## CONCLUSION

Accordingly, we affirm the summary-judgment orders of the trial court.