Affirmed and Opinion filed July 30, 2009








 

Affirmed
and Opinion filed July 30, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00791-CV

____________

 

CHRIS ROBERTSON, Appellant

 

v.

 

BRADLEY ODOM, JOE
BARNES, and SANDION, LTD. d/b/a 

COLDWELL BANKER
UNITED, REALTORS, Appellees

 



 

On Appeal from the
280th District Court

Harris County,
Texas

Trial Court Cause
No. 2005-81952

 



 

O P I N I
O N








Appellant,
Chris Robertson, purchased a townhouse in which the replacement stucco exterior
had been improperly installed.  After discovering that water was penetrating
into the interior of the townhouse, Robertson sued the seller of the townhouse,
appellee Bradley Odom, and Odom=s realtor, appellee Joe Barnes.  He alleged, among other
things, fraud and violations of the Texas Deceptive Trade Practices Act (ADTPA@) arising from representations Odom
and Barnes made to him during the sale of the townhouse, and contended that
Barnes=s liability should be imputed to Odom
under the legal theories of agency and respondeat superior.

Following
the presentation of Robertson=s evidence at trial, the trial court granted a partial
instructed verdict as to some of Robertson=s direct-liability claims against
Odom.  The jury then found in the defendants= favor on all six remaining legal
theories that were submitted at Robertson=s request, and also found that
Robertson and the stucco installer were solely responsible for Robertson=s damages.  On appeal, Robertson
contends in four issues that the trial court improperly granted a partial
directed verdict to Odom and that the evidence is factually insufficient to
support the jury=s verdict.  We affirm.

                                                               Background

The
townhouse, which is part of a three-unit townhouse complex located in the
Montrose neighborhood of Houston, was initially built with a synthetic stucco
exterior.  In 2002, the townhouse owners, Odom included, hired Savenok
Construction, Inc. (ASavenok@) to remove the synthetic stucco and install a Ahard-coat@ stucco exterior.  This process is
commonly referred to as a Astucco reclad.@

On April
7, 2002, during the reclad process, a rainstorm hit Houston.  At that point,
Savenok had removed the synthetic stucco but had not yet installed the new
hard-coat exterior.  To guard against potential water intrusion during the
reclad, Savenok had placed a rainwater diverter and plastic barricade over the
exposed portion of the townhouses.  However, the diverter failed and water
entered the townhouse, causing damage to the cabinets, kitchen sink, sheetrock,
and bathroom fixtures.  Odom repaired these damaged items and took additional
precautions to prevent mold growth.  Savenok completed the stucco reclad;
however, unbeknownst to Odom, the new hard-coat stucco contained several latent
installation defects that would later permit water to penetrate into the
interior of the townhouse.








In 2003,
Odom relocated to Dallas.  He hired Joe Barnes, a realtor with Coldwell Banker
United Realtors, to list the townhouse for sale.  Odom prepared a Seller=s Disclosure Notice, as mandated by
law,[1]
in which he represented that he was unaware of AOther Structural Repairs@ to the property, because he reasoned
that the April 2002 rainstorm repairs were not Astructural@ in nature.  In this appeal, two of
Robertson=s issues deal with that representation.

Robertson=s other two appellate issues arise
from a remark uttered by the realtor, Barnes, about the stucco exterior. 
Robertson was interested in purchasing the townhouse but had questions about
the stucco.  Barnes informed him that the original synthetic stucco had been
replaced by hard-coat stucco, which was Abetter than new.@  Robertson contends this was an
actionable representation and that Odom, the seller, can and should be held
vicariously liable for Barnes=s statement.

On
another occasion before the sale was complete, a construction worker made the
following disparaging remarks about the stucco to Robertson and his realtor,
Janie Morris: A[H]e just said directly to both of us, >You don=t want to buy this townhouse.  It=s B has all kinds of problems.  They=re junk . . . the stucco is all a
mess[.]= . . . [The worker] had indicated
that there was a big problem with the stucco.@  In response, Robertson instructed
his retained property inspector to carefully examine the stucco.  The inspector
reported no problems with the stucco.  Robertson ultimately purchased the
townhouse.








Unfortunately,
as a result of Savenok=s improper installation, the newly installed hard-coat stucco
exterior contained several latent installation defects, including (1) in
several locations, control joints were either missing or had been improperly
installed, (2) flashing, which helps prevent water penetration, had not been
installed, and (3) the stucco finish was cracked.  Because of these defects,
Robertson later discovered that water was penetrating through the stucco into
the interior walls of the townhouse, causing significant damage.  Both sides= experts agreed that these defects
would be apparent only to those with a Atrained eye@ and would not have been obvious to
any of the parties.

Robertson
sued Odom, Barnes, and Coldwell Banker, accusing them of negligence, negligent
misrepresentation, breach of contract, breach of warranty, common-law fraud,
statutory fraud, and multiple violations of the DTPA.  He also alleged that
Odom was vicariously liable for Barnes=s misrepresentation under the legal
theories of agency and respondeat superior.  In response, the defendants
contended that Robertson was contributorily negligent, and they also designated
Savenok, among others, as a responsible third party.

The case
proceeded to trial in April 2007.  Following the presentation of Robertson=s evidence, Odom moved for directed
verdict on all direct-liability claims.  Robertson conceded that Odom did not
violate DTPA sections 17.46(b)(6) and 17.46(b)(7), prompting the trial court to
grant a directed verdict to Odom on those grounds, among others.[2] 
The trial court then submitted the remaining direct-liability causes of action
to the jury in a twenty-question charge.  Robertson did not request a jury
submission on agency, respondeat superior, or Odom=s vicarious liability for Barnes=s conduct.

The jury
found as follows:

1.         Barnes did not violate Alaundry
list@ items (5), (7), or (24) of DTPA section 17.46(b);[3]








2.         Odom also did not violate section 17.46(b)(24);

3.         Neither Barnes nor Odom engaged in unconscionable conduct
under DTPA section 17.50(a)(3);[4]

4.         Neither Odom nor Barnes committed statutory fraud against
Robertson;

5.         Neither Odom nor Barnes committed common-law fraud against
Robertson;

6.         Savenok=s negligence
was a proximate cause of Robertson=s
damages;

7.         Robertson=s negligence
was also a proximate cause of his own damages; and

8.         Savenok and Robertson were each fifty percent responsible
for causing Robertson=s damages.

 

The
trial court ultimately entered a take-nothing judgment from which Robertson
appeals, bringing four issues.  Generally, he contends in his first three
issues that the trial court improperly granted a directed verdict as to (1) the
vicarious-liability allegations against Odom arising from DTPA sections 17.46(b)(6)
and 17.46(b)(7); and (2) Odom=s direct liability under section 17.46(b)(6).  Then,
in his fourth issue, Robertson claims that the evidence is factually
insufficient to support the jury=s finding that Odom and Barnes did
not violate the DTPA by failing to disclose the April 2002 rainstorm repairs,
which he describes as Astructural repairs.@

 

 








                                                                    Analysis

Appellant=s second and fourth issues turn upon
the same legal question C whether the defendants failed to disclose previous Astructural@ repairs C and therefore we address them
together.  In addition, we will group his first and third issues for
resolution, because both involve Odom=s alleged vicarious liability for
Barnes=s Abetter than new@ representation.

A.        Evidence of AStructural Repairs@ to the Property

In
Robertson=s second issue, he contends directed verdict was inappropriate because he
produced more than a scintilla of evidence that, by representing that the
townhouse did not have previous structural repairs, Odom violated DTPA section
17.46(b)(7).  His fourth issue is similar.  There, Robertson argues that the
overwhelming weight of the evidence showed previous structural repairs that
were not disclosed; thus, he concludes that the evidence is factually
insufficient to support the jury=s finding that Odom and Barnes did
not violate the DTPA.  

Both of
Robertson=s arguments presume that the term Astructural repairs,@ as used in the Seller=s Disclosure Notice and derived from
section 5.008 of the Texas Property Code, encompasses Odom=s April 2002 repairs to the cabinets,
kitchen sink, sheetrock, and bathroom fixtures.  However, we hold that, in this
statutory context, the term Astructural repairs@ denotes work performed on the
load-bearing portions of a residence.  Because Robertson produced no evidence
of undisclosed repairs to the load-bearing sections of the townhouse, we will
overrule his second and fourth issues.

1.         Standard of Review B Directed Verdict








A trial
court may properly grant a directed verdict if no evidence of probative force
raises a material fact issue.  Prudential Ins. Co. of Am. v. Fin. Review
Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  We review a directed verdict
under the same standard of review as a legal sufficiency, or no-evidence,
challenge.  See City of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex.
2005).  Thus, a directed verdict for a defendant may be appropriate if the
plaintiff fails to present evidence raising a fact issue essential to the
plaintiff=s right of recovery.  See Cherqui v. Westheimer Street Festival Corp.,
116 S.W.3d 337, 343 (Tex. App.CHouston [14th Dist.] 2003, no pet.).  We will consider the
evidence in the light most favorable to the party against whom the verdict was
directed, crediting favorable evidence if reasonable jurors could and
disregarding contrary evidence unless reasonable jurors could not.  See AVCO
Corp. v. Interstate Sw., Ltd., 251 S.W.3d 632, 667 (Tex. App.CHouston [14th Dist.] 2007, pet.
denied).

2.         Standard of Review B Factual Sufficiency

In a
factual sufficiency review, we must consider and weigh all of the evidence both
supporting and contradicting the finding in question.  Plas-Tex, Inc. v.
U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  We may set aside the
jury=s finding only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).  We may not pass upon
the credibility of the witnesses, or substitute our judgment for the jury=s, even if the evidence could support
a different result.  Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 407
(Tex. 1998).  The amount of evidence necessary to affirm a judgment is far less
than that needed to reverse it.  GTE Mobilnet of S. Tex. Ltd. P=ship v. Pascouet, 61 S.W.3d 599, 616 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  Thus, when we reverse a judgment for factual insufficiency, we must
outline the evidence pertinent to the issue and explain how the contrary
evidence greatly outweighs the evidence favoring the judgment, but we need not
do so when affirming the jury=s verdict.  Gonzalez v. McAllen Med. Ctr., Inc., 195
S.W.3d 680, 681 (Tex. 2006); Ellis, 971 S.W.2d at 407.








3.         Evidence of AStructural Repairs@

Odom, as
a seller of residential real estate, was legally required to disclose, in
writing, certain facts about his knowledge of the townhouse=s condition to Robertson, the buyer
of the property.  See Tex. Prop. Code Ann. ' 5.008(a) (Vernon Supp. 2008).  In
fact, the Property Code identifies the minimum disclosures that must be made,
and requires that the written notice be in a form Asubstantially similar@ to that provided in the statute.  See
id. ' 5.008(b).  

Here,
Odom completed a ASeller=s Disclosure Notice@ form that was apparently promulgated
by the Texas Association of Realtors.[5]  He indicated
that he was unaware of previous Astructural repairs,@ including foundation repairs, roof
repairs, or Aother structural repairs.@  According to Robertson, that affirmative denial violated
the DTPA, which prohibits representations Athat goods or services are of a
particular standard, quality, or grade . . . if they are of another.@  Tex. Bus. & Comm. Code Ann. ' 17.46(b)(7).  In his brief,
Robertson argues that the repairs that followed the 2002 rainstorm should have
been disclosed as Aother structural repairs@:

[T]he
representation by Odom that he was not aware of any Aother structural repairs@ was not entirely accurate.  On April 7, 2002 . . . a significant
amount of heavy rain poured into the exposed portion of the townhouse.  The
sheetrock behind the kitchen cabinets, the kitchen sink, and the bathroom
fixtures all were damaged by the incursion of rainwater. . . .

As a result of the rainwater incursion, Odom had to have a substantial
amount of sheetrock torn out, and a mold and mildew killing agent sprayed
throughout the area of the townhouse that had gotten wet. . . .

. . . .








The total cost of the remedial work that was to be done after the rain
incursion in the townhouse was $81,420.  That figure comprised Awork that needed to be done to repair and replace all
the damage cause[d] by the water incident,@
including removal of cabinets, ripping out of sheetrock (drywall), insulation
replacement, electrical repairs, and interior carpentry.[6]

 

Odom acknowledges that
these repairs were made but contends that they did not constitute Astructural@ repairs, as that term is used in the
Property Code.  We agree.

The
disputed portion of the Seller=s Disclosure Notice derives from Texas Property Code section
5.008(b), which requires a seller to disclose APrevious Structural or Roof Repair@ of which he is aware.  See Tex.
Prop. Code Ann. ' 5.008(b).  As we consider the meaning of the statutory terms
Astructural@ or Astructural repair,@ our objective is to determine and
give effect to the Legislature=s intent.  See Tenaska Frontier Partners, Ltd. v. Sullivan,
273 S.W.3d 734, 737 (Tex. App.CHouston [14th Dist.] 2008, no pet.).  We begin with the plain
and common meaning of the statute=s words.  See Fitzgerald v.
Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999).  In
addition, A[w]ords and phrases that have acquired a technical or particular meaning,
whether by legislative definition or otherwise, shall be construed
accordingly.@  Tex. Gov=t Code Ann. ' 311.011(b) (Vernon 2005) (emphasis added).








Chapter
5 of the Property Code does not define the word Astructural.@  However, when construing a
statutory word or phrase, we may consider the meaning assigned to the term
elsewhere in the act or in another act of similar nature.  Guthery v. Taylor,
112 S.W.3d 715, 721 (Tex. App.CHouston [14th Dist.] 2003, no pet.); Tex. Dep=t of Pub. Safety v. Loeb, 149 S.W.3d 741, 746 (Tex. App.CAustin 2004, no pet.); L &
M-Surco Mfg., Inc. v. Winn Tile Co., 580 S.W.2d 920, 926 (Tex. Civ. App.CTyler 1979, writ dism=d); see also Tex. Dep=t of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002) (A[C]ourts should not give an undefined
statutory term a meaning out of harmony or inconsistent with other
provisions[.]@).  Thus, we will give the same meaning to a term that has been used in
the same connection in similar statutes, unless something indicates that a
different meaning was intended.  Guthery, 112 S.W.3d at 721B22.

Elsewhere
in the Property Code, the Legislature has consistently defined Astructural,@ in the context of residential
construction, as referring to Athe load-bearing portion of a residence.@  See Tex. Prop. Code
Ann. ' 27.001(8) (Vernon Supp. 2008) (A>Structural failure= . . . means actual physical damage
to the load-bearing portion of a residence caused by a failure of the load-bearing
portion.@) (emphases added);  id. ' 401.002(13) (Vernon Supp. 2008) (A>Structural= means the load-bearing portion of
a home.@) (emphasis added).  Therefore, we likewise interpret the term Astructural repair,@ as used in section 5.008(b), as
referring to repairs performed on the load-bearing portions of a residence.[7]








During
argument,[8] Robertson
urged an expansive reading of the term Astructural,@ from Webster=s Dictionary, as Arelating to . . . a structure,@ where Astructure@ would then be defined as Asomething constructed or built.@  See Webster=s Third New
International Dictionary
2266, 2267 (1993).  We cannot accept this sweeping definition in this context,
for at least two reasons.  First, the dictionary itself sets forth a more
specific definition when Astructural@ is used in the context of a building, that is, Aof or relating to the load-bearing
members or scheme of a building as opposed to the screening or ornamental
elements.@[9]  Id. at 2266.  Second,
Robertson=s proposed definition would render much of section 5.008(b) meaningless
because, under that interpretation of Astructural,@ any repair to the house C no matter how inconsequential C would have to be disclosed at the
risk of incurring legal liability.  Thus, under that interpretation, the
remainder of the statute, which requires disclosures about defects and repairs
to specific parts of the home,  would become superfluous, having already
been subsumed into the all-encompassing category of Astructural@ repairs.  See Tex. Prop.
Code Ann. ' 5.008(b).   When possible, we will not interpret one portion of a
statute in a manner that renders other parts of it meaningless.  See Entergy
Gulf States, Inc. v. Summers, 282 S.W.3d 433, 442 (Tex. 2009); Saade v.
Villarreal, 280 S.W.3d 511, 522 (Tex. App.CHouston [14th Dist.] 2009, pet.
filed).

The
evidence introduced at trial conclusively established that the repairs made
necessary by the April 2002 rainstorm C that is, repairs to the cabinets,
sink, bathroom fixtures, and drywall C did not involve the load-bearing
portions of the home.  Odom specifically testified that the post-rainstorm
repairs were not Astructural,@ in the sense they did not implicate Athe things that hold the house up.@  Similarly, Rick Reynolds, who
performed all of the repair work caused by the rainstorm, testified as follows:

Q.        Did
you do any structural work?

A.        Not
at all.

 

Nor did Robertson produce
any other evidence that Odom or Barnes failed to disclose any repairs done to
the load-bearing portions of the townhouse.[10]








Therefore,
the trial court properly granted a directed verdict as to Odom=s direct liability under DTPA section
17.46(b)(7).  For the same reason, we hold that the evidence is factually
sufficient to support the jury=s finding that Odom and Barnes did not violate the DTPA by
not disclosing the April 2002 rainstorm repairs.  Accordingly, we overrule
appellant=s second and fourth issues.

B.        Odom=s Vicarious Liability for Barnes=s ABetter than New@ Statement

In his
first and third issue, Robertson contends he offered more than a scintilla of
evidence that Barnes=s Abetter than new@ statement violated DTPA laundry-list
items (6) and (7).  He continues by arguing that Barnes was Odom=s agent, and that Odom therefore
should be held vicariously liable for Barnes=s misrepresentation.  Thus, he
concludes that the trial court erred by granting a directed verdict as to Odom=s vicarious liability under section
17.46(b), subparts (6) and (7).

Appellant=s argument is misplaced, because Odom
did not request, and the trial court did not grant, a directed verdict on
Robertson=s vicarious-liability claims.  Instead, the only discussion during the
directed-verdict hearing involved Odom=s own conduct and legal
responsibility, not that which might be imputed to Odom as a result of Barnes=s actions.  For example, in the specific context of
Odom=s potential liability under section
17.46(b)(7), the record reflects the following discussion:

THE
COURT: Okay.  Seven. . . . 
Representing that goods or services are of particular standard, quality, or
grade, or that goods are of a particular style or model if they are of
another.  Okay.  Did Mr. Odom violate that?

[Robertson=s trial counsel]: Mr. Odom, we believe, did not if I am
following the Court=s ruling because the representations were made
B oral representations we were talking about were
made by Mr. Barnes.








THE
COURT: Okay.  Then seven is granted as
to Odom.[11]

 

Thus, although the trial
court disposed of Odom=s direct liability under sections 17.46(b)(6) and 17.46(b)(7),
it was never asked to, and did not, rule on the vicarious-liability claims
contained in Robertson=s operative pleading.[12] 


Moreover,
Robertson=s vicarious-liability allegations were not presented to the jury because
he failed to request their submission, and did not offer a properly worded
issue to the court.  Under Rule 279, the party with the burden of proof on a
ground of recovery is charged with the duty of submitting all of the disputed
elements of his cause of action to the jury.  Tex. R. Civ. P. 279; see
Cameron County v. Velasquez, 668 S.W.2d 776, 781 (Tex. App.CCorpus Christi 1984, writ ref=d n.r.e.).  The Rule also provides
that, unless the issue was conclusively established by the evidence,[13]
a party=s failure to submit a properly worded
issue, or to object to its omission, results in waiver.  Tex. R. Civ. P. 279; Bank
of Tex. v. VR Elec., Inc., 276 S.W.3d 671, 676 (Tex. App.CHouston [1st Dist.] 2008, pet.
denied).








Robertson
did not submit a properly-worded question, and did not request a jury
submission on agency or respondeat superior, in support of his claim
that Odom was vicariously liable for Barnes=s misrepresentation under section
17.46(b), subparts (6) or (7).[14]  Therefore,
he has waived any complaint about the failure to submit Odom=s vicarious liability to the jury.

Accordingly,
we overrule appellant=s first and third issues.

                                                                CONCLUSION

Finding
no merit in the issues presented, we affirm the judgment of the trial court.

 

 

/s/      Kent
C. Sullivan

Justice

 

 

Panel consists of Justices Yates,
Guzman, and Sullivan.









            [1]  See Tex.
Prop. Code Ann. ' 5.008 (Vernon Supp. 2008).





            [2]  The trial court
also granted a partial directed verdict as to other direct-liability claims
against Odom, including negligence, that were time-barred by the statute of
limitations.  Robertson has not challenged that limitations ruling on appeal.





            [3]  Generally, the
DTPA permits consumers to sue a person who uses a Afalse, misleading or deceptive act or practice@ specifically enumerated in section 17.46(b) of the
DTPA.  See Tex. Bus. & Comm. Code Ann. ' 17.50(a)(1)(A) (Vernon Supp. 2008).  That section,
which presently describes twenty-seven such categories of actionable conduct,
is commonly referred to as the Alaundry list.@  See Mays v. Pierce, 203 S.W.3d 564, 571 n.12
(Tex. App.CHouston [14th Dist.] 2006, pet. denied); Ortiz v.
Collins, 203 S.W.3d 414, 426 (Tex. App.CHouston
[14th Dist.] 2006, no pet.).  Here, the jury was asked whether Barnes (1)
represented that the townhouse had characteristics that it did not actually
have; (2) represented that the townhouse was of a particular quality if it was
another; or (3) failed to disclose known information about the townhouse with
the intent to induce Robertson to purchase a townhouse he otherwise would not
have purchased.  See generally Tex. Bus. & Comm. Code Ann. ' 17.46(b)(5), (7), (24) (Vernon Supp. 2008).





            [4]  A claim for
unconscionable conduct under section 17.50(a)(3) is distinct from a violation
of the section 17.46(b) laundry list.  See Mays, 203 S.W.3d at 571 n.12;
Ortiz, 203 S.W.3d at 426.





            [5]  On its face, the
form states that it complies with, and exceeds the requirements of, the
Property Code=s disclosure provisions.





            [6]  Citations
omitted.





            [7]  We note that
section 5.008(b) was enacted only six days before the Legislature
included a statutory definition for Astructural
failure@ in section 27.001.  Compare Act of May 13,
1993, 73rd Leg., R.S., ch. 356, ' 1,
1993 Tex. Gen. Laws 1614, 1616 (amended 2007) (current version at Tex. Prop.
Code Ann. ' 5.008(b)) with Act of May 19, 1993, 73rd Leg.,
R.S., ch. 797, ' 2, 1993 Tex. Gen. Laws 3166, 3167 (amended 2003)
(current version at Tex. Prop. Code Ann. '
27.001(8) (Vernon Supp. 2008)).





            [8]  In his brief,
Robertson offered no suggested definition for Astructural@ or Astructural
repair.@





            [9]  In fact, Webster=s dictionary elaborates on this definition: Athe [structural] details of a house consist of floor
joists, rafters, wall and partition studs, supporting columns [and]
foundations.@  Id. at 2266 (citation omitted).





            [10]  To the extent
that the stucco reclad may have affected the load-bearing portions of the house
and therefore constituted a Astructural
repair,@ the record reflects that Odom disclosed, and
Robertson knew of, the fact that the original synthetic stucco had been removed
and replaced by hard-coat stucco.





            [11]  (Emphases
added).





            [12]  In his second
amended petition, Robertson alleged:

 

As it relates to each and every cause of action set forth herein,
Plaintiff asserts the legal theories of agency and respondeat superior.  Barnes
and Coldwell Banker were acting as Odom=s
agents in the transaction made the basis of this lawsuit, and the
representations and actions of Barnes and Coldwell Banker took place while
Barnes and Coldwell Banker were operating within the course and scope of their
employment for Odom as Odom=s agents. 
Barnes and Coldwell Banker made representations to Plaintiff on behalf of Odom
. . . .  Odom=s agents were acting under express, actual, or with
implied authority on Odom=s behalf.  Pursuant to the laws of Agency . . . any
acts of Odom=s agents are imputed to and are considered acts of the
principal, Odom.





            [13]  During oral
argument, Robertson contended for the first time that a listing agreement
between Odom and Coldwell Banker proved an agency relationship sufficient to
impute liability to Odom.  Even were we to construe this new argument as a
claim that the agency issue was conclusively established under Rule 279, this
contention was not included in Robertson=s
original or post-submission brief.  Therefore, it is waived.  See Frias v.
Atl. Richfield Co., 999 S.W.2d 97, 106 n.8 (Tex. App.CHouston [14th Dist.] 1999,  pet. denied); In re
C.A.K., 155 S.W.3d 554, 562 n.5 (Tex. App.CSan Antonio 2004, pet. denied) (A[A]
new issue may not be presented for the first time at oral argument.@); Tex. R. App. P. 39.2 (AOral argument should emphasize and clarify the written
arguments in the briefs.@) (emphasis
added).





            [14]  In fact,
Robertson did not even submit the issue of whether Barnes=s Abetter than new@ statement violated section 17.46(b)(6).  Instead, the
trial court submitted a liability question, worded exactly as Robertson
requested, inquiring whether Barnes violated DTPA laundry-list items (5), (7),
and (24).  Moreover, the jury found that Barnes did not violate section
17.46(b)(7); thus, as a matter of law, the jury=s negative finding on this question negated the issue of Odom=s vicarious liability under section 17.46(b)(7).  See
Shupe v. Lingafelter, 192 S.W.3d 577, 580 (Tex. 2006) (holding that
omission of negligent-entrustment issue was harmless in light of jury=s refusal to find that driver=s negligence proximately caused accident); Labor v.
Warren, 268 S.W.3d 273, 277 (Tex. App.CAmarillo
2008, no pet.) ([W]e conclude that the trial court=s ruling that no agency relationship existed between
Warren and Hendricks, even if erroneous, was rendered harmless by the
unchallenged findings that Warren did not defame Labor.@).